## WHITE *v.* McCRACKEN.

### Opinion delivered May 11, 1895.

1. *Sale—Constructive delivery.*

In a sale of personal property incapable of manual delivery, no further delivery is required to pass the title where the purchase money is paid, and a bill of sale executed, with an agreement that the vendor shall hold possession as bailee of the vendee.

2. *Place of delivery—Waiver.*

A stipulation in a contract of sale that the property sold shall be delivered at a certain place may be waived by the parties.

3. *Delivery—Bill of sale.*

To constitute a good delivery of property incapable of manual delivery, it is not necessary that the bill of sale of the property

should specifically describe it if absolute control of the property is surrendered to the buyer.

4. *Charge of court—Omissions.*

> One who appeals cannot complain that the instructions of the lower court were incomplete if he made no effort to have the omissions supplied at the trial.

Appeal from White Circuit Court.

GRANT GREEN, JR., Judge.

### STATEMENT BY THE COURT.

S. H. White, a constable, and W. P. Best, a town marshal of Judsonia, levied executions upon certain logs as the property of B. D. Barnum. Joseph McCracken brought this action of replevin to recover possession of the logs, claiming to have purchased the same from said Barnum before the issuance of said executions. He testified that in July, 1892, he made a contract with Barnum, by which Barnum agreed to get out and deliver to him, at the mouth of Little Red river, a certain quantity of oak, gum and ash logs for a certain price per cubic foot. A portion of the purchase price was to be advanced to Barnum as the work progressed, and the remainder was to be paid on delivery. About the 1st of January, 1893, finding that he had paid Barnum the full value of the logs, he took a bill of sale for the same. Afterwards, on the 22d of January, 1893, he went to the yard where the logs were lying in Cleburne county, and Barnum delivered to him the logs in controversy, for which he had paid him in full. He further testified that this sale and delivery took place before the issuance and levy of the executions under which White and Best claim the property; that he then hired Barnum, and agreed to pay him forty dollars per month to assist in rafting the logs to New Orleans; that afterwards Barnum had no further interest in the logs, and was only in possession of them as his agent and bailee. The testi-

mony of Barnum and other witnesses for plaintiff corroborated the testimony of McCracken.

The evidence on the part of defendants consisted mainly of certain statements made by McCracken to certain of the witnesses, and of statements contained in his answer to a garnishment proceeding. These statements of McCracken, proved by the defendant, were to a certain extent inconsistent with his testimony that the logs in question had been sold and delivered to him.

The plaintiff asked the following instructions, which were given by the court over the objections of defendants:

"1. The jury are instructed that when personal property, from its character and situation, is incapable of actual delivery, the delivery of a bill of sale for the same, or other evidence of title, is sufficient to transfer the title and the possession to the vendee."

"2. The jury are instructed that delivery of personal property may be either actual or by construction, when, from the nature or situation of the property, actual delivery is impracticable, and when there is such a delivery, the sale will be complete, and the title pass to the purchaser."

"3. The jury are instructed that if you find from the evidence that the plaintiff, McCracken, had, before the levy of the execution in this cause, paid to B. D. Barnum, the full value of the timber under the contract with him, and the said Barnum was in good faith in possession of the same as the bailee of the plaintiff, then you will find for the plaintiff."

In addition to above instructions, the court gave the following at the request of the defendants:

"2. The jury are further instructed that if they find the timber in controversy is so large, and of its nature incapable of actual delivery, then to pass the title there must be something done equivalent to it. The

donor must not only part with the possession, but with the dominion of it."

The defendants also asked the court to give four other instructions, which were refused. They also asked the court to modify instruction No. 3 by adding thereto the words: "if it is not otherwise fraudulent," which request was refused, and exceptions noted.

There was a motion for new trial, which was overruled, and the defendants appealed.

*Ashley Cockrill*, for appellant.

1. The delivery of a bill of sale, for a valuable consideration, with no actual or symbolical delivery of the chattel, other than is to be inferred from the bill of sale, is not sufficient against a creditor of the vendor. 127 Mass. 381; 6 Wharton (Pa.), 53; 132 Mass. 232; 4 Gray, 307; 47 Ark. 210.

2. Mere words alone cannot constitute the seller a bailee of the buyer, so as to take the contract out of the statute of frauds. 1 N. Y. 301; 22 Mo. 354; 22 Cal. 103; 49 Ga. 143; 38 N. J. 536, 551; 54 Ark. 305.

3. It was error to refuse the 1st and 4th instructions asked for defendants. 47 Ark. 210; 54 *id.* 305.

4. Appellee was estopped. Bigelow on Estoppel, p. 699; 57 Ark. 638; 33 Ark. 465; 53 *id.* 196; 45 *id.* 37; 39 *id.* 131; 38 *id.* 571; 36 *id.* 96; 3 Hill, 215; 6 Lea (Tenn.), 289; Bigelow on Estop. pp. 555, 712, 610, 710; 122 U. S. 241.

*S. Brundidge, Jr.*, for appellee.

1. The only possession appellee could take of the logs and timber was the control and management of same, and this he did take, which is sufficient. 31 Ark. 163; *Ib.* 131. The transfer was effected by the delivery of the bill of sale, and possession taken soon afterwards, which completed the sale. 108 Mass. 351; 114 *id.* 116; 26 Am. Dec. 626; 11 *id.* 360; 56 Ark. 93.

2. There is no showing made that Henson was misled or prejudiced by anything said or done by appellee, and there is no estoppel. 54 Ark. 499; 53 *id.* 196.

3. The instructions properly declare the law. 47 Ark. 210 is not applicable to this case.

RIDDICK, J., (after stating the facts.) We find no error in the instructions given by the court. They say, *1. When constructive delivery sufficient.* in effect, that if the logs sold were so large as to be incapable of manual delivery, then, if the purchase price was paid in full, a bill of sale delivered, and the possession surrendered by the vendor, and he afterwards held them in good faith as the bailee of the purchaser, then no further delivery was required to pass the title. The law, so far as it is stated in these instructions, is not prejudicial to the rights of appellants. *Trieber* v. *Andrews*, 31 Ark. 163; *Puckett* v. *Reed*, 31 Ark. 131; *Shaul* v. *Harrington*, 54 Ark. 307; *Hight* v. *Harris*, 56 Ark. 98.

Neither do we think that the court erred in refusing *2. Waiver of agreement as to place of delivery.* to give instructions asked by appellants. The first of these instructions was to the effect that if McCracken entered into a contract with Barnum, by which Barnum agreed to furnish and deliver to McCracken certain timber at the mouth of Little Red river, the title would not pass until the timber was delivered at such place. This instruction was calculated to mislead the jury, for McCracken did not rely for title upon the first contract referred to in this instruction. He claimed that Barnum had, after this contract was made, sold and delivered him the timber at a place different from that named in the first contract. When one person contracts with another to buy from him timber or other personal property to be thereafter delivered at a certain place, such property may, if it suits the convenience of the parties, be delivered and accepted at a place different from that

named in the contract.  The seller could not compel the buyer to receive it at such place, but if he does receive it, no one else can complain because it was not delivered at the place named in the contract.

The fourth instruction asked by appellants was to the effect that, to constitute a delivery, the plaintiff should not only take complete and absolute control, but that the property must be specifically described in the bill of sale, etc.  When the property is turned over to the buyer, and the buyer takes absolute control of it under the sale, it is not essential that there should be a bill of sale, much less that the property should be specifically described therein.

The seventh and eighth instructions asked by appellants rested upon the doctrine of estoppel, which we think does not apply in this case, and were properly refused.  The statement of McCracken to one of the parties, and his answer in the garnishment proceeding, appear to a certain extent inconsistent with his claim of ownership of the timber.  It was therefore proper for the jury to consider them, but the statements were not made under such circumstances or acted upon to such extent as to create an estoppel.

It was not error in the court to refuse to modify instruction number three by adding thereto the words "if not otherwise fraudulent."  That instruction stated to the jury that if the timber had been fully paid for by McCracken before the levy of the execution, and Barnum held possession of same as bailee of plaintiff in good faith, then they should find for plaintiff.  The modification would have added nothing to the meaning of the instruction, for if the timber had been fully paid for, and the transfer made in good faith, it could not have been "otherwise fraudulent."

*Margin note:* 3. Requirements in bill of sale.

If the appellants desired the court to instruct the jury that if the sale to McCracken was not in good faith, but only a sham or pretended sale made to protect the property of Barnum from his creditors, it would then be of no validity, they should have requested an instruction to that effect.

While we do not think there was any reversible error committed by the court, for fear of misapprehension we will say that we do not consider the charge of the court in this case entirely satisfactory. As applied to the facts of this case, it is not, in our opinion, erroneous or misleading, but it is to a certain extent incomplete. The defect arises from the practice which trial judges sometimes adopt of composing their charge to the jury altogether of selections from the instructions, or requests to charge, furnished by the different counsel in the case. This practice was condemned in *Davis* v. *Railway*, 53 Ark. 129. It necessarily leads to a charge lacking in that completeness, clearness and uniformity calculated to assist the jury in understanding the issues that they are to determine. <span>4. As to omissions in court's charge.</span>

A charge to a jury should rarely begin with a statement of an abstract principle of law. The first paragraph of the charge should state the nature of the case, and define, as clearly as possible, to the jury the issues which they are called upon to determine. While, under our laws, a judge cannot charge the jury as to the facts or weight of evidence, he yet may, and it is his duty to, define to them the issues which they are to determine. And it will be found that a clear statement of the issues of fact which the jury are to decide will frequently obviate the necessity of long instructions regarding the law of the case. But if the instructions were somewhat incomplete, none of the instructions asked by appellants tended to remedy this defect, and it was said by this court, in *Fordyce* v. *Jackson*, that "it is the settled practice in

this State that a party cannot avail himself of an omission which he made no effort to have supplied in the trial court." 56 Ark. 602.

The instructions given, so far as they went, were not erroneous or misleading, and the evidence is sufficient to support the verdict of the jury. The judgment is therefore affirmed.