GULF, C. & S. F. RY. CO. VS MOSELEY.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 129).

1. *Instructions—Failure to Request—Damages.*

In an action for damages by a riparian owner for the washing away of his land caused by the construction by defendant of wing dams along the opposite shore, the court instructed the jury that they might find for plaintiff for an amount they might be satisfied plaintiff was entitled under the evidence. *Held;* Defendant could not complain of such instruction when it failed to request an instruction directing that the measure of damages should be determined by deducting from the market value of the land immediately before the injury complained of, the market value thereof immediately thereafter.

2. *Damages—Interest.*

When defendant in a manner equivalent to taking from plaintiff, injures his property, it is not error to allow interest at the legal rate on the amount of the damages recovered, from the date of the injury.

3. *Instruction—When Bad in Part, Duty of Court.*

The court is not required to modify an instruction which contains a statement vitiating it in its entirety.

4. *Instruction—When in Error is Cured by Correct Verdict.*

When the verdict as to damages is proper an erroneous instruction with reference thereto is thereby cured.

5. *Damages—Successive Actions for Repetition.*

A judgment for damages for washing away land caused by the construction of wing dams on the opposite side of the river, is not a bar to subsequent actions for damages where, by each successive rise of the river, additional land was washed away.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, February 24, 1902.

Action by Nannie T. Moseley against the Gulf, Colorado & Santa Fe Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*J. W. Terry, W. A. Ledbetter,* and *S. T. Bledsoe,* for appellant.

*A. Eddleman* and *J. F. Sharp,* for appellee.

LAWRENCE, J.    Appellant owns and operates a railroad in the Indian Territory. Part of its line extends along and near to the east bank of the Canadian river. The stream gradually encroached upon the east bank, endangering appellant's roadbed. To protect it, appellant in 1893 built a succession of dykes or wing dams at right angles to the east bank of the stream, at the place of its said encroachment, from 500 to 600 feet apart, and extending into the river and the channel thereof, from the said east bank, distances of from 300 to 1,000 feet, by sinking piling and filling the space between with stone, intending it for a permanent structure. At the time the dykes were built appellee was in actual possession of 137 acres of land upon the opposite side of the river, claiming same as a homestead under a certificate of the receiver, United States Land Office, upon which full payment of all charges and fees had been made. The dykes caused the current of the river to be deflected across and upon the land of appellee, and at each successive rise of the river the water washed away a portion of her land—5 acres in September, 1893, 10 acres in 1894, 75 acres in July, 1895, 5 acres in 1897, and 5 acres in 1898, being a total of 110 acres. December 11, 1897, appellee

brought this action, claiming $4,795 damages, being the alleged market value of the land destroyed. November 23, 1899, she filed an amended complaint. Appellant made motion for an order requiring plaintiff to make her complaint more definite and certain, in that to allege whether the dykes were built within the natural channel of the river or in the new channel made by its encroachments upon appellant's roadbed. This motion was overruled. Thereupon the appellant filed a demurrer to the complaint upon the ground that it shows that the alleged cause of action is barred by the statute of limitations, and that otherwise it fails to state a cause of action. This demurrer was overruled. To these rulings appellant duly excepted. By leave of the court, answer was filed, denying that appellee was the legal or equitable owner of the land in question, and that she was in possession of, or entitled to the possession of, the same at the date of the several alleged injuries —in short, denies all the material statements of the complaint and further states therein that the dykes were carefully and skillfully built and maintained for the sole purpose of protecting its railroad track, roadbed, and right of way from the encroach ments of the river and its overflows, and that they were not built farther into the river than was necessary for the protection of its track, roadbed, and right of way. It also alleges that none of the injuries complained of occurred within three years next before the action was begun, and that it is barred by the three-year statute of limitations. The cause was tried to a jury, which returned a verdict of $1,980 in favor of appellee, with interest at 6 per cent. from the date of injury. Judgment was rendered thereon for $2,768.70. The evidence tended to sustain the allegations of the complaint, and the jury was justified in so finding, if properly instructed.

The court charged the jury in substance: "A riparian owner has no right to obstruct the natural channel of a river to

cause a change of its course. When a river encroaches upon his land, he may take the necessary steps and use the necessary means to restore it to its original channel, to maintain his bank in its original condition, and to that extent protect his property from the incursion of the water. The restoration of a river to its original channel and the maintenance of one of its banks to its original and natural condition may often be to the prejudice of the riparian owner upon the other side of the stream, both in times of high and low water; but a riparian owner on the opposite side of a stream is not required to sit until his property is swept away by an encroaching river. He has the right to protect his property against such encroachment, and to turn the current of the stream into its original channel. And the owner upon the opposite side has the same right to protect his bank. But neither owner has the legal right to do more than to maintain the bank in its original condition, or to restore it to that condition. If, from a consideration of all the evidence in the case, you are of the opinion that defendant has done no more in the construction and maintenance of said dykes than to protect its property under the law stated, your verdict should be for defendant. Upon the other hand, if you believe from a preponderance of the evidence that the defendant, in the construction of the dykes, did more than was necessary to maintain its bank of the stream in its original condition or to restore it to that condition, and to bring back the stream to its original course as it existed when defendant went into possession, and that such acts, if any, were in excess of its right as herein defined, and that they were the direct and proximate cause of the damage to plaintiff's land, as alleged in her complaint, in that event your verdict should be for the plaintiff for whatever amount of damage you may be satisfied she is entitled to from the evidence, with interest at the rate of 6 per cent. per annum from the date the damages were inflicted. If you find for the plaintiff, you can only as-

sess the damages that have accrued within three years prior to the commencement of this suit." Exceptions were duly taken by appellant to this charge of the court, and it requested numerous instructions upon its part, which appear in the record, which were refused by the court. To this action of the court appellant duly excepted. Appellant moved for a new trial upon a number of grounds, which have been repeated in its assignment of errors. The motion was overruled, and to this action of the court defendant duly excepted.

Appellant assigns 23 errors, but those which we deem of controlling weight and importance and whch require our consideration relate to the charge of the court to the jury.

Complaint is made of the instruction as to the measure of damages to be allowed, as stated by the court to the jury, "At whatever amount you may be satisfied she is entitled to from the evidence." This very general direction is subject to criticism, but we think appellant is barred from assigning error thereon because of its failure to request the giving of one more specific, directing that the measure of damages should be found by deducting from the market value of the land immediately before the injury its market value immediately after the injury. True, the appellant did ask the court to instruct the jury on this basis, but coupled therewith: "Value of the land in the condition and situation it was in three years before the suit was filed, and the situation and condition it was in after it was washed away by the river." The clause thus added vitiated the entire instruction, and the court was not required to modify it and reduce it to comply with the law. Moreover, the verdict accords with what we think is the evidence in the case as to the damages. Hence the error is without prejudice. White vs McCracken, 60 Ark. 613, 31 S. W. 882; McGee vs Smitherman, 69 Ark. 632, 65 S. W. 461.

The further objection to the part of the charge to the jury to compute interest on damages at the rate of 6 per cent. per annum from the date the damages accrued is without merit. The damages arise from the destruction of the land of appellee by being washed away by the floods and current which were cast thereon by the building of the dykes into the current It is equivalent to the taking of the land by appellant, thereby depriving appellee of its use. In such case it cannot be justly said that the allowance of the legal rate of interest upon the fair market value of the property so taken is wrong. This view is supported by numerous decisions of many courts of last resort, of which the following are named: Wilson vs Troy, 135 N. Y. 97, 32 N. E. 44, 18 L. R. A. 449, 31 Am. St. Rep. 817; Kelly vs McDonald, 39 Ark. 387; Jacksonville, T. & K. W. Ry. Co. vs Peninsular Land, Transp. & Mfg. Co. (Fla.) 9 South. 661, 17 L. R. A. 56; Bare vs Hoffman, 79 Pa. 71, s. c. 21 Am. Rep. 42; G., H. & S. A. Ry. Co. vs Horne (Tex. Sup.) 9 S. W. 440; Washington Ice Co. vs Webster, 125 U. S. 426, 8 Sup. Ct. 947, 31 L. Ed. 799; Sutherland on Damages, 173.

Appellant urges with ability and ingenuity, citing numerous authorities supposed to be in support of its position, that the court erred in refusing to give the following instruction at its request: "If the jury find from the evidence that the dykes, ripraps, or other embankments referred to in the evidence were of a permanent character, and that the erection and maintenance of the same would necessarily cause the channel to change from the west to the east bank of the river, and cause the destruction of plaintiff's property, then the plaintiff's cause of action or claim for damage would be barred within three years from the time the first injury occurred after the erection of said dykes or embankments, and if the jury find from the evidence that any appreciable portion of the plaintiff's land was washed away, or damaged as the result

of the construction and maintenance of dykes or other embankments more than three years before the institution of this suit, then, in that event, the plaintiff's claim or cause of action would be barred by the statute of limitation, and the jury will find for the defendant." It must be conceded that the question presented by this instruction is in many cases that may be cited not easy of answer. It has been the subject of many decisions since the days of Lord Holt, when he decided the case of Fetter vs Beal, 1 Salk, 11. In that case plaintiff brought action of trespass for injuries received from an assault and battery, and recovered damages. Subsequently it was discovered that a fracture of the skull was the result of the assault and battery, when another action was brought for this additional injury. A plea in bar of former recovery was interposed. To this plea the plaintiff demurred, and the demurrer was overruled. In making the ruling on the demurrer, the court said: "Every dropping is a new nuisance, but here is not a new trespass. In trespass the grievousness or consequence of the battery is not the ground of action, but the measure of damages which the jury must be supposed to have considered at the former trial." This case has been cited and discussed often by the courts of this country and England. There cannot be much room for discussion that it presents a correct rule of law applicable to trespass where the injury is direct and final; but not applicable to nuisance, which is the result or consequence of the act of one who so exercises a right or uses his property so wrongfully as to injure the property of his neighbor. In nuisance the cause of action does not arise from the direct action of a defendant, but is from the injurious consequence of his wrongful or unlawful act. Therefore, under the rule first stated, successive actions must be brought for any injuries arising after the institution of the first action. The leading English case on this subject, and one recently quoted with favor by the courts in this country, is that of

Backhouse vs Bonnomi, 9 H. L. 503, decided June 28, 1861. The point decided was the statute of limitations. Plaintiff in error was the owner of coal beneath the surface of the land of defendant in error. Plaintiff so negligently mined the coal that sufficient pillars of coal were not left to support the surface, and resulted in the subsidence of the surface. More than six years after this negligent mining, but within six years of the subsidence, an action for damages therefor was brought. The plea of statute of limitations was interposed in the trial court, and a demurrer thereto was there overruled. On error to the Exchequer Chamber the judgment of the trial court was reversed. Upon error taken in House of Lords the judgment of the Court of Exchequer Chamber was affirmed; it being held that, when the enjoyment of the surface was actually disturbed from lack of sufficient support, the cause of action then arose. The right of support was not in the nature of an easement, but the right was to the enjoyment of the property, and the obligation was cast upon the owner of the neighboring property not to interrupt that enjoyment.

In Thayer vs Brooks, 17 Ohio, 489, 49 Am. Dec. 474, the court said: "There is no case to show that, when land is vested in a party and fresh injuries are done upon it, fresh actions will not lie." This language is quoted in the leading American case of Uline vs Railway Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661, and approved, and further cites in support of same proposition Thompson vs Gibson, 8 M. & W. 281; Mitchell vs Darley Main Colliery Co., 14 Q. B. Div. 125, overruling Lamb vs Walker, 3 Q. B. Div. 389, in which Cookburn, C. J., dissented; Whitehouse vs Fellows, 10 Q. B. (N. S.) 765. And further says Earl, J., in said case of Uline: "I find no case in England, now regarded as authority, in conflict with these cases.    *    *    *    This same rule of damages which I am trying to enforce prevails generally, with rare ex-

ceptions, in other states of the Union.    In harmony with these authorities are the views of approved text-writers.    3 Blackst. Com. 220; 1 Sedg. Dam. (7th Ed.) 278; Mayne on Dam. (Am. Ed.) pars. 110, 111; 1 Suth. on Dam. 199, 202; 3 Suth. on Dam. 369, 399.    While the authorities in other states are not entirely harmonious, those which I have cited give the drift of the decisions."

The ground of defense insisted upon by appellant is that the dykes complained of were permanent structures, and intended to be so, and, if any injury resulted to appellee's land by reason thereof, then it follows that, by reason of the permanency of said structures, the injuries must necessarily be likewise of a permanent character to her land, and hence the damages must be recovered once for all in the original action, and therefore there could not be successive actions for recurring injuries.    In support of this position it cites numerous cases, and quotes from the case of Troy vs Cheshire R. Co., 23 N. H. 101, 55 Am. Dec. 177, which is conceded to be a leading American case upon the subject.    True, the quotation of appellant from that case is that, "wherever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without any change from any cause but human labor, then the damage is an original damage and may be at once fully compensated;" and the opinion continues beyond the above quotation contained in appellant's brief, and gives the reason for the rule in the following language:    "Since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means.    *    *    *    Thus the individual who so manages the water he uses for his mills as to wash away the soil of his neighbor, is liable at once for all the injury occasioned by its removal, because it is in its nature a permanent

injury; but, if the work is so constructed that upon the recurrence of a similar freshet the water will probably wash away more of the land, for this there can be no recovery until the damage has actually arisen, because it is yet contingent whether any such damage will ever arise." The opinion further proceeds by way of illustration: "In one of the cases which arose from building of the great canals in New York the case was that a high dam was erected upon the Falls of the Hudson for the purpose of directing the waters into the feeder for the canal. The lands of the owner were buried under 20 feet of water, and their value to him, of course, entirely destroyed. The work was in nature and design permanent. There it would be clear that the party injured would be entitled to the entire damages that he had sustained, and must sustain, in a single action; in truth, the entire value of his property." To the same effect is Smith vs Railroad Co., 23 W. Va. 453, which holds: "Where the damage is of a permanent character and affects the value of the estate, a recovery may be had at law of the entire damages in one action; but, where the extent of the wrong may be apportioned from time to time, separate actions should be brought to recover the damages sustained" —citing the cases of Troy vs Cheshire R. Co., 23 N. H. 101, 55 Am. Dec. 177, and Thayer vs Brooks, 17 Ohio, 489, 49 Am. Dec. 474. The case is approved in the subsequent case of Hargreaves vs Kimberly, same court, 26 W. Va. 789, 53 Am. Rep. 122. The law as above presented was followed by the court below as manifested by the instruction as to successive actions, in which it directed that no single injury which was complete, and upon which action could have been brought three years before the commencement of this action, should not be considered by the jury. Under the evidence this would necessarily exclude the damages claimed to have been suffered for the year 1903, and it is presumed that it was not considered by the jury.

We think the decisions above quoted, English and American, reflect the great weight of authority in support of the proposition that where an adjoining landowner erects and maintains a permanent structure upon his land which injures the land of his neighbor, and the injuries are successive and contingent, they can only be recovered for as they arise, by successive actions. We are of the opinion that the proposition applies to the case at bar, and the action of the court in refusing to instruct the jury as requested, and complained of by appellant in its twenty-first assignment of error, was not erroneous.

Otherwise than as hereinbefore named, we are of the opinion that the instructions given the jury were full, fair, and clear presentations of the law of the case, and that the jury was justified, under the law and the evidence, in returning the verdict, and that the judgment should be, and it is hereby, affirmed.

GILL, C. J., and CLAYTON, J., concur.