First Nat. Bank of Madill vs Pickens.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 947).

1.  *Banks—Deposits—Notes.*
    Where a bank held a note as collateral which was paid after the loan

secured by it had been repaid, the money received was a deposit for the owner's use and benefit, if he desired to so consider it.

2. *Money Received—Remedy.*

An action for money had and received can be brought whenever money has been received by defendant under any circumstances which show that in justice and good conscience plaintiff is entitled to the money.

3. *Same—Evidence—Actions.*

In a suit brought against a bank for an alleged deposit where evidence showed that, after a debt secured by a collateral note had been paid, plaintiff executed a new note for the balance due on the collateral note, the proof of the deposit thus implied sufficiently coincided with the allegations as plaintiff should have been credited by plaintiff with the amount, and in equity that which should be done is considered to be done.

6. *Appeal.*

When a party desires specific instructions they should be requested at the trial, else there will be no ground for error in the court of review.


Error to the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, December 21, 1905.

Action by I. Hunter Pickens against the First National Bank of Madill and another. Judgment for plaintiff against defendant bank, and said bank brings error. Affirmed.

*Cruce, Cruce & Blakemore,* for plaintiff in error.

*Potter, Bowman & Potter,* for defendant in error.

LAWRENCE, J. March 2, 1905, defendant in error filed his complaint, alleging as cause therefor the following: "For cause of action the plaintiff alleges that some time in the month of January, 1904, the exact date now not remembered, this plaintiff delivered to and deposited with the First National Bank of Madill, through its then cashier, F. R. Hedrick, $2,076, which the said bank took, received, and appropriated to its use and benefit, and has failed and refused to pay, or return the same, or any part thereof, to this plaintiff, though demand

has often been made on said bank for said sum.     *     *     *
Wherefore plaintiff says the said defendants owe him said
$2,076, with 6 per cent. interest thereon from date of deposit,
and prays judgment for said amount." The said cashier was
joined with the bank as a party defendant. A demurrer to
complaint for such misjoinder was sustained, and Hedrick,
cashier, was dismissed as defendant. Defendant answered,
denying that the deposit had been made, that it had appropriated
said sum of money, or any other sum to its use, or that by reason
of said acts, or any other acts, it ever became liable to pay
plaintiff any amount of money. The issue was tried to a jury.

The evidence disclosed that defendant in error was an
aged Choctaw Indian, unable to speak or write the English
language, and ignorant of banking business and business methods
The contention between the parties arose out of the following
transaction: One Burns, a son-in-law of defendant in error,
had made to defendant in error his promissory note for $3,000.
Burns borrowed of the bank $1,000 to pay defendant in error
upon the note, and the $3,000 note was given the bank as
collateral security for the $1,000 loan, which loan was indorsed
as a credit upon the $3,000 note. Subsequently, and while the
note was yet being held by the bank as collateral security,
Burns, the son-in-law, desired to pay off the balance of $2,076
due upon the $3,000 note, which was held by the bank as col-
lateral security, and to effect this purpose he made a note to
the bank, plaintiff in error, February 4, 1904, for $2,076, due
November 1, 1904, bearing interest at the rate of 10 per cent.
per annum, signed by himself and one P. O. McMillan. The
$3,000 note remained in possession of the bank. Burns, in his
testimony, explains why this note was not taken up, in this
language: "Well, the note originally called for $3,000 at
10 per cent. interest, and I had been handling the old man's
business; that is, collecting the rent on his farm. I have a
store and farm down there. So one day I went down to settle ,

and my book showed I had overpaid the old man more money than was coming. He owed me a store account amounting to $200 and some cents, so I wrote out a settlement, and I says, 'Just make it even money, and hand it to the old man.' Hedrick says, 'I can't turn the note over to you. That is a settlement between the old man and you. That is a matter between you and the old man. I will turn the note over to the old man, and you and him settle.' * * * I have never seen the note since." This witness testifies that he paid the $2,076 note, made to the bank, plaintiff in error, to Hedrick November 1, 1904. Defendant in error testified, through an interpreter, that he did business with the plaintiff in error, had put money in the bank, had a pass book furnished by it, and had delivered, and had delivered it over to the bank, upon its request; but it had not been returned to him. He stated that he had drawn money from the bank, at one time $1,360. It appears, from a statement furnished by plaintiff in error and used in evidence by defendant in error, that there was paid this defendant, November 17, 1904, at the bank, by the cashier, Hedrick, $1,363.27, which balanced defendant's accounts, as shown by the statement. The statement did not embrace the note of $3,000, or any part of it. It is undisputed, and so testified by Hedrick, the cashier of the bank, that the transaction between him and Burns as to the payment and satisfaction of the $2,076, balance of the $3,000, was without the knowledge of defendant in error. The note then held by the bank was paid in full by Burns November 4, 1904.

At the close of the evidence the defendant Bank requested the court to instruct the jury to return its verdict in favor of defendant, which was refused. It then requested the court to instruct the jury "that before you can find for the plaintiff you must believe from the evidence that the money sued for was, either by the plaintiff or some one on his behalf, deposited with the defendant," which instruction the court refused. It

further requested the following instruction: "If you find that the $3,000 note testified about was left with the defendant as collateral security, without authority upon the part of the defendant to collect the same, and that thereafter Hedrick, in his individual capacity, and not as the agent of the bank, collected said note, and appropriated the said proceeds to his own use, you will find for the defendant"—which was refused by the court. The further request was made by it to instruct the jury: "If you find from the testimony that the $2,076, testified about, was not actually paid to the defendant, but that through an arrangement between Hedrick and Burns the said Hedrick in his individual capacity credited the $3,000 note, testified about, with said sum of $2,076, and received in lieu thereof from said Burns a note for said amount, you will find for the defendant"—which instruction was refused. The court, in substance, instructed the jury "that the burden of the proof is upon plaintiff to establish all the material allegations of his complaint, that it was the sole judge of the weight of the testimony and the credibility of the witnesses, and that the questions were exclusively for its consideration. If the evidence shows that the defendant is indebted to the plaintiff for any amount of money, your verdict should be for him for the amount you may find due to him. If the plaintiff has failed to establish his claim by fair preponderance of the evidence, then you should find in favor of the defendant."

The jury returned a verdict in favor of plaintiff for $2,076, with interest at 6 per cent. per annum from November 17, 1904. Defendant filed its motion for new trial, and stated the causes to be: "First, the refusal of the court to instruct the jury to return a verdict for defendant; second, in refusing instruction 2; third, in refusing to give instruction 3; fourth, in refusing instruction 4; fifth in refusing to permit witness Burns to testify to conversation between himself and Hedrick at the time the $2,076 note was made; sixth, the testimony

fails to sustain the verdict, as the uncontradicted testimony shows that the plaintiff did not actually deposit the amount of money sued for with defendant, but showed that, if defendant was liable in any event to the plaintiff, it was not liable upon the contract of deposit, but only for a wrongful appropriation of the $3,000 note left with it as collateral security." The motion for new trial was overruled.

Plaintiff in error assigns as error the same causes as appear in its motion for new trial, and in the same order, with the exception of the last, the sixth, which he omits, and in lieu thereof assigns as error the overruling of motion for new trial. The whole of the errors assigned are expressed in the sixth ground for a new trial, which states that "the uncontradicted testimony shows that the plaintiff did not actually deposit the amount of money sued for with the defendant, but shows that, if defendant was liable in any event to the plaintiff, it was not liable upon the contract of deposit, but only for a wrongful appropriation of the $3,000 note left with it as collateral security." This amounts to an admission that this note, upon which there was due $2,000 and interest at 10 per cent. per annum from December 30, 1903, had been wrongfully appropriated by the plaintiff in error; for the evidence is abundant, and not controverted, that the note was in its custody and control and was being held by it in the character of a trustee for defendant in error after it had ceased to be collateral security for the Burns $1,000 loan, which was paid. There is no pretense that it was being held by the bank for collection, and neither in the nature of a deposit. It was the plain duty of the bank to have returned it to defendant in error. On the contrary, without the knowledge of defendant in error, the cashier of plaintiff in error evolved a scheme by which this note should be converted into money for the benefit of Burns and the plaintiff in error. February 4, 1904, Burns as principal and P. O. McMillan as comaker made a note to the plaintiff in error for the sum of

$2,076, the estimated balance due upon this $3,000 note, due November 1, 1904, bearing 10 per cent. interest per annum after maturity, and this note was paid in full to the plaintiff in error during the month of November, 1904. Thereby this money became a deposit for the use and benefit of defendant, if he should elect to so treat it.

The plaintiff earnestly insists that there was an actual loan of $2,076 made to Burns by Hedrick upon his own account, out of the money of his father-in-law which was then in the bank, and this in fact was not a transaction between the bank and Burns, but a transaction between Hedrick and Burns, and therefore the bank, plaintiff in error, is not liable to account to defendant in error for any deposit because of the $3,000 note; that, if the bank is liable to defendant in error, it is for the wrongful conversion of said note, which is a tort, and therefore the allegata and the probata do not agree, or, in other words, a failure of proof, and cites section 3282, Ind. Ter. Ann. St. 1899 (Mansf. Dig. § 5077): "Where, however, the allegation of the claim or defense to which proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof." Concede that it was a wrong, a tort, for the plaintiff in error to thus convert, or, say, misappropriate, the defendant in error's securities in its control and possession for which an action might lie for damages, yet it is a common-law rule that a plaintiff may waive a tort of this character and sue in assumpsit for money had and received; and, furthermore, it is equitable in its nature, and lies wherever a defendant has received money under any circumstances which show that in equity and good conscience it belongs to the plaintiff. While the complaint contains unnecessary allegations that would have been subject to a motion to strike, yet it contains enough, properly pleaded, to sustain the proof offered.

It is further insisted by plaintiff in error that the action of the cashier, Hedrick, in this transaction was not within the scope of his employment, and, there being no proof that it was done with its knowledge, it is not responsible therefor. The evidence plainly shows that the $2,076 note was made by Burns to plaintiff, and so Burns testified, which is in no way refuted, that he paid the whole amount of the note to Hedrick, its cashier; and, in the absence of proof to the contrary, it is presumed that the cashier passed it to the credit of the bank, plaintiff in error (though "in equity and good conscience" he should have given defendant in error credit therefor), which estops this plaintiff in error from making this defense of want of authority on part of the cashier. Martin vs Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49. It is a mere play upon words to say that the proof fails to show that defendant in error did actually deposit the $2,076 in the bank of the plaintiff in error. It is enough to meet the requirement of the law and the rule of pleading that it was the duty of plaintiff in error to have given defendant in error credit upon its books for $2,076 on November 17, 1904, and, applying the equity maxim, "that which ought in equity to be done is to be considered as done," and which is peculiarly appropriate to this case. It is not necessary that it should have been an express deposit. It is sufficient to treat it as an implied deposit.

It is urged that the court erred in failing to instruct the jury at length, and more specifically, upon the question of law applicable to the questions of fact raised by the evidence. Plaintiff would be in a better position to press this point if it had requested more specific instructions upon the points suggested. It is too late now to make the complaint. It is a well-settled rule that a party desiring specific and elaborate instructions to a jury should request them at the trial; otherwise, it is no ground for error in the court of review. White vs Mc-Cracken, 60 Ark. 613, 31 S. W. 882. Furthermore, as to the

instructions asked by plaintiff in error and refused, we think they have been disposed of by the views of the court above expressed. They were wholly inapplicable in view of the undisputed facts, and were properly denied.

The assignments of error as to the action of the court in excluding evidence we have considered, and do not think the assignments are well taken. The court, upon the ruling as to the exclusion of certain testimony, stating that it was not of such character as to be binding upon the plaintiff, who was not present at the conversation, and it was not between parties that had any authority to bind him by any statement, and it was not part of the res gestae, committed no error.

Upon the whole case, the judgment is right. A fair and just conclusion was reached. It should not be disturbed, and is therefore affirmed.

GILL, C. J., and CLAYTON, J., concur.