Mrs. Irene Farr brought this suit against T. H. Black and the Citizens' National Bank of Higgins, Tex., to recover the sum of $987.09, the amount of a deposit in that bank, and also the value of a diamond ring, alleging substantially that the deposit was occasioned by the sale of certain crops to the amount of $400 and the lease of certain land by defendant Black, acting as agent for her, under the express agreement that he would deposit the same to her credit, subject to her check.
E. C. Gray, having been appointed administrator of the estate of Clarence Farr, deceased, intervened in this case and claimed the deposit as the property of the estate of said Farr. Defendants Black and the bank in their answer alleged that Black was the president of defendant bank, and whatever had been done by him in the matter complained of was done as the president of the bank and for its benefit, and not for the benefit of himself individually; that the land upon which the crop which was sold was grown, was the separate property of Clarence Farr, who was the husband of the plaintiff at the time of his death; that Mrs. Farr was acting as Farr's agent in the lease of the land and the sale of the crops, duly authorized by him so to do. They denied that there was an agreement with plaintiff that the money realized from the lease of the land and sale of the crop was to be deposited subject to plaintiff's check. They also alleged that Farr was in debt to the bank, which debt was evidenced by a note secured by chattel mortgage upon certain cattle, and that, prior to the death of Farr, the bank had matured this indebtedness under an accelerating clause in the mortgage, and had appropriated such deposit to pay off and discharge such indebtedness, and placing a small balance to Farr's credit.
Upon trial before the court without a jury, judgment was rendered in favor of defendant bank, and that plaintiff and intervener take nothing by their suit [except as to the diamond ring, which was returned to plaintiff in court].
The evidence discloses that Farr owned a section of land at the time of his marriage to plaintiff; that he was married to plaintiff in December, 1922. He became ill in the spring of 1923, from which illness he never recovered, but died in Ellis county, OkL on the 8th day of October, 1923. During Farr's sickness, and at his instance, his wife went out to the farm three or four times for the purpose of looking after the cattle, and to see that they were getting water and grass. It appears also that there was a 20-acre patch of wheat on the place, and that Farr, during his illness, and before he left the farm, had arranged with one Peterson to cut this wheat, thresh it, and haul it to market, which Peterson did, paying the expenses out of the *Page 293 
money received for it, and depositing the balance in a Canadian Texas bank to his account. It seems that plaintiff checked this wheat money out; the deposit amounting to about $350. Out of this amount she paid $141 to the Federal Land Bank on a debt owing that bank by Farr. This action of hers in checking out the wheat money is not shown to have been known to Farr.
Some time before the contract in controversy herein was executed Mrs. Farr testifies that she and her brother had a conversation with Farr about leasing the land to one Rudy, and that, after the crops were sold to Rudy and the land leased to him, he was to cut up the crop that was then growing on the place, but no trade was made with Rudy. In the meantime Black had been consulting Mrs. Farr about leasing the land and selling the crop to Henry and Gertrude Schwab, and on the 26th of September, 1923, Black went to Ellis county, Okla., to see Mrs. Farr, and presented to her the following written instrument for her approval and signature, to wit:
"Higgins, Tex., Sept. 26, 1923.
"This lease contract, made and entered into by and between Mrs. Clarence Farr, through her agent, T. L. Black, known in this contract as the party of the first part, and Mrs. Gertrude Schwab and Henry Schwab, known in this contract as the parties of the second part, witnesseth:
"The party of the first part hereby agrees to lease her section of land, No. 323 Blk. No. 43, all in Lipscomb county, Tex., for a term dating from the 27th day of September, 1923, to March 1, 1925. The party of the first part also agrees to sell all crop now growing on said land for a consideration as follows: A total of $800 this day paid, the receipt of which is hereby acknowledged.
"The party agrees to give possession of all the land as of the 27th inst., but is not to give possession of any of the house, cellar, or any portion of the yard until October 15, 1923.
"The party of the first part also agrees to sell to the party of the second part 52 heifer yearlings, all branded on left thigh and now located about one mile southeast of said section for a total of $1,456, or $28 per head for each and every head of heifers he or she can deliver, not to exceed 52 in number.
"The party of the first part also hereby acknowledges payment in full for the above-mentioned 52 head of heifers, or the sum of $1,456.
"The party of the second part hereby agrees to the foregoing contract, and further agrees to allow all horses and cattle yet belonging to the said party of the first part to run on said section above mentioned until the 15th of October, 1923.
"The parties of the second part hereby agrees to keep said place in as good repair as it is in at this time, the party of the first part furnishing what material as deemed by her as necessary.
"Witness our hands this the 26th day of September, 1923. T. H. Black, Party of the First Part. Henry Schwab, Gertrude Schwab, Parties of the Second Part.
"I hereby consent and agree to the above contract. Mrs. Clarence Farr."
Plaintiff signed this instrument without consultation with Farr and without his knowledge or consent. Mrs. Farr testified that, at the time of the signing of this instrument, Farr was very sick, and had been sick since March, 1923, and was very weak. Sometimes he understood what was said and sometimes would not. That for a good portion of the time he was out of his head, and had been that way for some time before his death.
The evidence shows that the bank had declared its indebtedness due; that this was done on the 26th of September, 1923, the day the contract with the Schwabs was signed, under the accelerating clause of the mortgage given by Farr to secure the note thus matured, but the exact date when the amount on deposit was set off against this note is not shown.
We will not discuss the appellant's propositions or the appellees' counter propositions in the order in which they come, but our discussion will be of those questions which we consider paramount and controlling in our decision of the case. We are met at the threshold of the case with appellees' contention, with reference to intervener's petition attacking the sale and lease to the Schwabs, that "a party will not be permitted to recognize the validity of a contract for one purpose, and at the same time deny its validity for another purpose."
It is true the intervener attacks the validity of the sale and lease and sets out that each and both were executed without authority from Farr, and that the money was wrongfully received by the defendant bank, and that the defendants conspired together to do said wrongful acts, and charges their wrongful conversion, not of the lease and crops, but of the money received therefrom, and prays for judgment for the sum of the amount of the deposit.
Where property of a party has been sold without authority from the owner, the owner may sue to set aside the contract of sale for fraud, or for want of authority, or bring an action for money had and received under any circumstances which show that in equity and in good conscience it belongs to such owner. First National Bank v. Pickens, 7 Ind. T. 725, 104 S.W. 947.
Under the statutes of Texas intended to simplify the rules of pleading, no distinctions as to forms of actions are recognized. Chevalier v. Rusk, Dallam, 611; Goldman v. Blum, 58 Tex. 630. The same strictness of pleading in regard to joinder of parties to causes of action does not prevail in Texas as is observed in states where the distinction between law and equity forms of action *Page 294 
is recognized. Craddock v. Goodwin, 54 Tex. 578; Galveston, etc., Ry. Co. v. Heard (Tex.Civ.App.) 91 S.W. 371.
It may be that, if the intervener was bringing suit to set aside the lease and the sale of the crop, the Schwabs should have been made parties, yet he had the right, by charging the invalidity of the sale and lease at the same time, to recognize the fact of the execution of such lease and the making of such sale, and alleging the conversion of the proceeds without making the Schwabs parties to the action, and sue for the money converted by the bank. The evidence established the sale and lease as a fact, and in part was offered by the defendants under this very pleading, and was, to say the least, admissible upon that phase of the case which we will now discuss.
We recognize the rule that a bank has the right to apply funds in a general deposit, belonging to a customer to the liquidation of an indebtedness owing it by its customer, and that too after the death of the customer, and even though the debt had not matured. Traders' National Bank v. Cresson, 75 Tex. 298, 12 S.W. 819. But this rule is effective only where the transaction is a deposit. The relation of banker and depositor is a voluntary one, and a general deposit made with a bank is ordinarily a contractual relation. 3 R.C.L. § 145, p. 516; First National Bank v. Greenville National Bank, 84 Tex. 40, 19 S.W. 334; Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 147-153, 33 S.W. 862.
In order that this contractual relation shall exist it is necessary that there shall be a meeting of the minds assenting to such relationship, and the assent of both parties is essential to an ordinary deposit to create a privity of contract between the bank and the depositor. Title to money does not pass from the legal owner to the bank, and the relation of creditor and debtor does not arise between them as to money deposited without the knowledge and consent of the depositor. No one can create this relation between the owner of money and the bank without authority from the owner. In such case, the person who holds the depositor's money, and who deposits it without authority, is guilty of conversion of the funds, and a bank receiving it is likewise guilty of conversion, at all events, if it is so related to the payee making the deposit as to affect it with notice. 2 Michies, Bank and Banking, § 121, pp. 897, 898; Winslow v. Harriman Iron Co. (Tenn. Ch.App.) 42 S.W. 698; Union Stock Yards National Bank v. Campbell, 2 Neb.Unoff. 72, 96 N.W. 608; Burtnett, Administrator v. First National Bank of Corunna, 38 Mich. 631; Patek v. Patek, 166 Mich. 446,131 N.W. 1101, 35 L.R.A. (N. S.) 461.
In the Patek Case last cited the wife, without the knowledge and consent of the husband, and without any authority, caused the money to be delivered to the bank. She had no title or interest in this money. The Supreme Court of Michigan held upon these facts:
"If the complainant is able to establish these facts, we think he is right in his contention that title to the money never passed from him to the bank, and that the relation of creditor and debtor never existed between them as to said fund. * * * And the rule is the same, even though the depositary had no notice or knowledge at the time the deposit was made that it was the money of another."
Such being the nature and character of the deposit, then it naturally follows that a deposit, made without the knowledge or consent of the owner of money, and without authority from him, does not create such contractual relation. In the case at bar the question as to whether or not such contractual relation existed depends upon the authority of Mrs. Farr and Black, not only to make such deposit, but upon their authority, also, to make the sale of the crops, and to lease the land, for there is no pretense that Farr ever authorized the deposit in the bank of the money received from the sale and lease.
Did Mrs. Farr have the authority to make the sale and lease, or to authorize Black to make such lease and sale? The answer to this is no. The trips made to the farm by Mrs. Farr at the instance of Farr, to look after the cattle, and see that they had grass and water, was such work as any hired hand could have performed, and does not evince any such special trust reposed in his wife by Farr as would in the least degree establish her agency to represent him in the disposition of his separate property.
There is one other instance testified to by Mrs. Farr, and relied on to establish such agency. In the conversation she and her brother had with Farr, with reference to the lease of the land to Rudy, it might be understood that she was authorized to lease the land to Rudy, but she did not make this lease. She substituted her own judgment that the Schwab lease was the best lease, and set aside her instructions to lease to Rudy, and leased it to Schwab and wife.
As there is no evidence to support the trial court's findings that, notwithstanding Clarence Farr did not expressly confer authority upon the plaintiff, his wife, to make the sale and lease that was made, she became his agent to dispose of said crops and lease said land, and on account of said Clarence Farr's weakened physical and mental condition, and his subsequent incapability to transact business, his wife, the plaintiff, became his agent by implication of law, to sell said crops and lease said land as she did, we set aside such findings of fact.
There is no implied agency in the *Page 295 
wife, by virtue of the marriage relation, to transact any business for the husband with reference to his separate property, or the disposition thereof. She is not disqualified from acting as the agent of her husband. Crutcher v. Sligar (Tex.Civ.App.) 224 S.W. 227. But such agency must be established as in any other agency, and is not to be presumed because of the marital relationship. We also recognize the rule that agency, in the case of the wife, may be presumed from the actions and conduct of the parties. Lilly v. Yeary (Tex.Civ.App.) 152 S.W. 823; Holmes v. Tyner (Tex.Civ.App.) 179 S.W. 889. But this presumption cannot arise, unless there are facts upon which to base it. In this case it is admitted that the land which was leased was the separate property of the husband, and that the sale of the crops thereon took place before they had been severed from the soil. A wife is not authorized to dispose of or pledge the separate property of her husband, unless she acts as his agent, duly authorized. Souther v. Hunt (Tex.Civ.App.) 141 S.W. 362.
For the reasons stated, we think there was error in the judgment of the trial court, and here order said judgment reversed and rendered in favor of E. C. Gray, administrator, and against the defendant bank, for the sum of $782.09, with interest thereon from September 26, 1923, at 6 per cent. per annum, and that, as to the judgment in defendant bank's favor as to the claims of the plaintiff and plaintiff's judgment for the diamond ring, they be and the same are affirmed.
 On Second Motion for Rehearing.
Appellees Black and the bank have filed their second motion for rehearing, and seem to have misinterpreted and misunderstood our original opinion and our opinion on rehearing.
First: We are of the opinion that, by reason of the conversion of the property under the circumstances set out in the original opinion, the relation of depositor and banker did not exist between Farr and the bank; there had been no meeting of their minds to form such contractual relationship. This being true, the bank's debt against Farr and its debt owing to Farr stood on the same footing as that of an ordinary creditor. While the conversion took place during the lifetime of Farr, it left the bank in debt to Farr for the converted property. This debt became a debt due and owing to the estate of Farr on his death. There having been no lien in favor of the bank created by the relationship of banker and depositor, the bank's debt and the debt owing Farr's estate by the bank stood on the footing of any other nonlien debt.
In our discussion of the facts in the original opinion, it will be seen that the bank, when it appropriated the proceeds of the sale of the crops and lease of the land, had no character of lien upon the funds so appropriated. This being true, regardless of the question of solvency or insolvency of the estate, and waiving the question as to whether or not the appellees' pleadings were sufficient to entitle them to the right of set-off, such right, in any event, could not arise as against the debts of the first and second class. In other words, the statute (article 3458, Vernon's Sayles' Ann.Civ.St.) requires the county judge to classify all claims against an estate, and give priority to same as follows: First, funeral expenses and the expenses of last sickness; second, expenses of administration, etc.; third, lien debts; fourth, all claims legally exhibited within one year after the original grant of letters; fifth, all claims legally exhibited after the lapse of one year.
It appears from the face of the record that there are debts due and owing by the estate in each of these classes, and it appears from the evidence that the estate is practically insolvent. The secured or third-class claims resting upon the land of the estate take that asset out from under the right of the administrator to appropriate it to the payment of the appellees' claim for a set-off, and takes it out from under such right of appellees, for, as between the first and second class claims and unsecured claims against the estate of a decedent, the claims under the first and second classes must be paid out of the unincumbered assets of the estate, even though the estate is insolvent. Rodgers v. Sturgis National Bank (Tex.Civ.App.) 152 S.W. 1176. This being true, the bank cannot claim the right to set-off certainly as against the first and second class claims. Williams v. Robinson, 56 Tex. 350.
It will appear from what we have said that appellees' right of set-off did not and could not exist until those claims given priority by statute be first paid, and it is incumbent upon the bank to pay into the registry of the court the value of the property as indicated in the original opinion.
We therefore withdraw our opinion on the first motion for rehearing, and substitute this opinion upon both the first and second motions for rehearing made by appellees, and here overrule both motions. *Page 296