HUNT v. STATE.

Opinion delivered February 27, 1904.

72   241
83   459

1.  LARCENY—THEFT OF WIFE'S PROPERTY.—A husband may be guilty of
    larceny of his wife's personal property, under Const. 1874, art. 9, § 7,
    providing that the real and personal property of a *femme covert*, so
    long as she may choose, shall remain her separate property.  (Page
    245.)

2.  SAME—VARIANCE.—Under an indictment alleging that defendant stole
    money, proof that he stole a check upon which he obtained the money
    does not constitute a variance.  (Page 249.)

3.  SAME—OBTAINING MONEY BY FRAUD.—Where a husband, intending to
    defraud his wife, represented to her that he would invest her money
    for her, and thereby obtained from her a check for her money, and
    collected the same, and appropriated the money to his own uses, he
    is guilty of larceny.  (Page 249.)

4.  STATUTE—RETURN OF BILL BY GOVERNOR WITHOUT APPROVAL.—A legis-
    lative bill becomes a law when it is returned by the governor to the
    legislature four days after it was presented to him for signature
    with a communication stating that the bill had become a law without
    his signature, as he may waive the five days allowed him for
    consideration of bills.  (Page 249.)

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

Affirmed.

*Gus Fulk,* for appellant.

Because of the unity of persons a man cannot steal from
his wife.  48 Ind. 197; 70 Ind. 317; 43 Tex. 616; 51 Ill. 162;
26 Mich. 106; 95 N. Car. 693; 82 Cal. 107; 2 Bish. M. W. 24,
152.  The common law upon this question is unchanged by the
married women's act of 1875 and article 9, § 7 of Constitution of
1874.  61 Ark. 381 and cases cited; 49 Ark. 430; 30 Ark. 17;
56 Ark. 277; 43 Ark. 212.  As to whether same worked a repeal
by implication see:  Black, Int. Laws, 110, 112; 34 Ark. 499;

41 Ark. 149; 50 Ark. 132; 51 Ark. 559; 53 Ark. 417. The court erred in permitting the defendant's wife to testify against him. Act No. 81, 1903, p. 141, is not valid; because not signed by the governor or held by him the required number of days to become a law without signature.   Const. 1874, Ark., art. 6, § 15; 24 Fla. 293.   The court erred in refusing to give instruction No. 2 as asked, and in giving same as modified.   Clark, Crim. Law, 286; 49 Ark. 147; 53 N. Y. 111; 67 N. Y. 322; 72 N. Y. St. 253; 1 Whart. Crim. Law, § 964.   The court erred in giving the third instruction.   34 Ark. 160; 61 Ark. 15; 62 Ark. 538.

*George W. Murphy, Attornay General,* for appellee.

BUNN, C. J.   This is an indictment for the larceny of the money of his wife by the defendant, with a count for obtaining money under false pretenses, which last, however, was not considered in the trial.

The circumstances of obtaining the wife's money were of the most aggravating character.   The wife before their marriage was Miss Maud Nevills, a young woman who had earned the amount of $600 as a saleswoman in one of the leading dry goods stores in Little Rock and deposited the same in the German National Bank of this city.   The defendant had ascertained this fact in some way and from some source, and paid his addresses to her, and on the 6th of October, 1902, they were married in this city by the pastor of one of its leading churches.   It seems that he almost immediately set to work to get hold of this money of his wife, and by one promise and representation and another, mainly to the effect that he would purchase certain business property, or a share in it, with the money thus obtained for her benefit. Being importuned in this way—yielding, doubtless, much to her wifely feelings—she gave him a check for said amount on the German bank; signing her marital name, Maud Hunt, thereto. On being presented in this shape, the German bank officials declined to pay it.   The defendant then induced her to sign her maiden name, Maud Nevills, to the check—the name on the bank books—and in this shape presented it, and it was paid.   This was late in the afternoon of the 14th of October, 1902, and the defendant, on one of the trains in the evening of the same day, in company with another woman, left the city, and the two were

next heard of in the city of Los Angeles, California, a few days afterwards. The constable of Big Rock township, in which the city of Little Rock is situated, hearing of the defendant's whereabouts, telegraphed to the chief of police of Los Angeles, giving a description of the defendant, with his name, and an alias, requesting that he be arrested and held until he himself could reach that city from Little Rock. The defendant was taken in charge by the constable on his arrival in Los Angeles, accordingly, and brought back to Little Rock, where one or more indictments were lodged against him in the first division of the circuit court of Pulaski county. The other woman, Bird Sheppard, who went with the defendant to Los Angeles, was in that city when the defendant was taken in charge there by the constable from Little Rock, but was not permitted to board the same train with the defendant on his return in charge of the constable, but succeeded in doing so at El Paso, Texas, en route, disembarking from another east-bound train at that place, and testified at the trial.

There was evidence in the case to the effect that the defendant had planned the marriage, etc., as part of the scheme to obtain the money some time before the marriage was consummated, and the circumstances justified the conclusion that the elopement was in fact a permanent desertion of the wife by the defendant. There was no controversy as to the manner of obtaining the money, nor as to the deposit of the same in the bank by the wife.

The defendant asked the trial court to give the following instructions, to-wit:

"(1) If you find from the evidence that the property alleged to have been stolen was at the time the property of Maud Hunt, and that at the time Maud Hunt was the wife of this defendant, then you will find the defendant not guilty, because in this state the husband cannot be guilty of larceny of the property of his wife."

"(2) If you find from the evidence that the wife of defendant, Maud Hunt, placed in the custody of defendant a check for $600, to be cashed by him, and the money invested in her name or for her use, and that defendant afterwards cashed said check and converted the said money to his own use, you will find the defendant not guilty of larceny, because that would not be larceny, but embezzlement."

The court refused to give the first of said instructions, and modified the second one by adding:

"But, on the other hand, if you believe from the testimony, beyond a reasonable doubt, that defendant, by fraudulent artifice, practiced upon prosecuting witness, Maud Hunt, did obtain from her a check for $600, and drew the money on it, and thereby obtained and carried away her money, as alleged in the indictment, and had, at the time he so practiced said fraudulent artifices, and obtained and carried away said money, with the felonious intent to steal the same, you will find him guilty of grand larceny, as charged in the first count of the indictment."

The defendant excepted to the ruling of the court in refusing to give the first of these instructions, and in giving the second only as modified.

The defendant then asked a third instruction, as follows:

"(3) Defendant, J. F. Hunt, moves the court to instruct the jury to bring in a verdict for the defendant of not guilty, on the ground that there is a variance between the allegations of the indictment and the evidence, the indictment alleging the larceny of $600, and the evidence showing the property taken to have been a check for $600."

The court refused to give this instruction, to which ruling defendant at the time excepted, and exceptions were noted.

The defendant also excepted to the following charge of the court to the jury, to-wit: "You are to exercise your judgment and common sense, neither of which you are to leave behind you when you go into the jury room. Under the laws of the state of Arkansas a married woman may own property absolutely in her own right. A husband in this state may steal the property of his wife. It is for you to determine from the testimony in this case and the law given you whether the defendant has stolen the money as alleged in the indictment. If you find from the evidence beyond a reasonable doubt that he conceived the idea that he would steal the money, which he knew or believed the prosecuting witness had, and, for the purpose of enabling him to accomplish that object, he married her, and used artifices upon her, and thereby deceived her, inducing her to deliver to him the money, having all the time the intention of stealing it, the

marriage would be no protection to him, but would rather be an aggravation of the offense."

The defendant excepted to the above remarks, and his exceptions thereto were noted.

From the foregoing abstract it readily appears that there are two main issues of law raised by the instructions, to-wit, whether or not, in the present state of the law on the subject in this state, a husband can be found guilty and punished for the larceny of the wife's property; and whether, under the facts and circumstances of this case, the offense, if offense at all, is that of larceny or of embezzlement, getting money under false pretenses, or of some other of the phases of stealing.

Under the common law a husband could not be found guilty of larceny in respect to his wife's personal property, simply because on their marriage her personalty *ipso facto* became his property, and he could not be found guilty of the larceny of his own property. But of recent years, both in this country and in Great Britain, there has been a great enlargement of a married woman's property rights as against her husband, and in some instances an absolute separation of her rights from those of her husband. But the law on the subject may be yet regarded as in a state of transition from the old to the new principles, and for this reason precedents have not had time to have grown into such magnitude and volume as in most other changes from the common to the statute law rules.

As an illustration either of the extreme conservatism of the courts, or the defects of the statutes wherein they fall short of a complete revolution, we may take the case of *Thomas* v. *Thomas,* 51 Ill. 162, cited and much relied on by the appellant's counsel in this case. After some discussion of the question to the husband's larceny of the wife's property, the conclusion of that court was summed up in this statement: "The act of 1861 (Laws of 1861, p. 143), known as the 'Married Woman's Law,' has not so far destroyed the relation of husband and wife as to render either guilty of larceny by converting the property of the other." The charge of larceny in that case was made against the wife, who had deserted her husband, and carried with her a watch, or disposed of it so that it could not be found. "Whose watch?" said the court. "Was it her watch, or did it belong to someone

else? If it was her own, under the law of 1861, called the 'Married Woman's Law,' she had a right to dispose of it without consent, or even the knowledge, of her husband. The law gives her that right, and if she exercises it, however injudiciously, there is no ground of legal complaint on the part of the husband. Again, if it belonged to the husband, it could not, even under that law, be held larceny. That act has not so far destroyed the relation of husband and wife as to render either guilty of larceny by converting the property of the other. Whatever is the civil liability, if any, it is not larceny, and the evidence fails to show that the watch belonged to some other person."

We have not the Illinois Married Woman's Act before us, and cannot therefore give any definite construction of its statute. We are still left to the inquiry whether or not that statute was so full and complete as to create an entire and absolute separation of a wife's property from the control and influence of the husband over her property. The court in that case said that the act was not so full and complete as to produce that result, leaving the inference that if such had been the case, then the husband, at least, might be held for the larceny of the wife's property. No statute has wrought any change in the common law rule as to the wife's dealing with the husband's property, for she still has every interest in his property she ever had. The ordinary married woman's law, as found in the several legislative acts, may fall short of an entire and absolute separation, for these acts are generally specific. But while in this state the statute itself is not full and complete to work a revolution in the law on the subject, yet the constitutional provision on the subject is broad enough to cover any conceivable property right of the wife, and is expressed in this language, to-wit: "The real and personal property of any *femme covert* in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her the same as if she were a *femme sole;* and the same shall not be subject to the debts of her husband." Const. 1874, art. 9, § 7.

The sole question in the case of *Kies* v. *Young,* 64 Ark. 381, was whether or not the common-law doctrine that a husband is

responsible for the antenuptial debts of the wife was in force. The court in that case held that that common-law rule prevailed. The rule, however, was subsequently changed by act of the legislature, and the husband is not now responsible for the wife's antenuptial debts. Acts of 1899, page 4.

Had our constitutional provision been in the constitution or the married woman's law of Illinois, we cannot say how the supreme court of the state would have ruled on the subject; nor does it matter what the law of that state was on the subject, since we assume, for the sake of the argument, at least, that its supreme court properly considered it. It was a charge against the wife for the larceny of the husband's property, and the case is thus somewhat differentiated from the one at bar. The commission of the alleged larceny in that case was sought by the plaintiff husband to be made a ground of divorce from his wife; but upon consideration the court finally held, in effect, that whatever might be said on the question of law involved, there not having been any conviction of the wife for the larceny of the husband's property, the mere charge was no ground for divorce.

As has been intimated, the constitutions and statute laws of the American states have not gone so far as to make any radical changes as to the wife's relation to the husband's property from the rule of the common law, and these modern laws throw little light on the question of the criminal liability of the wife in her dealing with her husband's property.

In the state of Indiana section 5117 of the Revised Statutes of 1881 is substantially like our constitutional provision, and the other portions of the married woman's law of that state is substantially like our married woman's law. In *Beasley* v. *State,* 138 Ind. 552, the supreme court of that state held that "under the enabling statutes of this state the husband's interest in his wife's property is abolished, and he may be convicted of the larceny of her money." In its essential features that case was very much like the one at bar, and practically all the arguments made by counsel in this case were made in that. The court in that case, in concluding the discussion, said: "Prior to the enactment of the several sections of the statutes of this state, the common-law fiction prevailed of the legal unity of husband and wife. In the eye of the law they were one person, and the

husband was that person." Indeed, when left thus in sole ownership and management of her personal property, it would seem to follow that the wife should have all the benefits and power of the law, both civil and criminal, to give her that protection to her property rights which belong in common to all property owners. She certainly has as against third parties; and with equal reason and necessity, if not greater reason, she should have as against her husband, who so far forgets his marital obligations, as well as the rights of property, as to steal from her, taking advantage of his better opportunity therefor. In the case of *Beasley* v. *State,* just referred to, the court further said: "One who obtains money or goods by some fraudulent trick or artifice, and carries them away, is guilty of larceny." This was the manner in which the defendant obtained the money in this case. The evidence shows conclusively that it was a well-laid scheme on his part to procure the money even before they married—certainly before the delivery of the check to him by her. The beginning of the offense was the first conception of the design, the intent to steal the money, followed by the fraudulent artifices employed. The larceny of the money overshadowed and covered all the methods by which he sought to accomplish his purpose, and the intent was formed before he received the check, and the charge of larceny was properly made, tried and sustained by the evidence. *Fulton* v. *State,* 13 Ark. 168.

In *State* v. *Jones,* 132 N. C. 1043—a case much more favorable to the defendant than the case at bar, because it was a charge of trespass against the husband for persisting in living in his wife's house after being forbidden to do so by her—the court held that, under the circumstances of the case, the charge could not be sustained, saying: "This case presents the novel feature of a wife seeking a judicial separation from her husband by the criminal action of trespass." In that case Chief Justice Clark delivered a dissenting opinion, which is most instructive and interesting for its research and reasoning on the subject.

The conclusion of the whole matter is that while modern civilization has greatly, if not entirely, relieved the personal unity of the husband and wife and the superior control of the husband of the disgraceful cruelty practiced in the early stages of the common law, yet the very letter of the law in that respect has

not undergone very marked changes, but, as to property rights, that unity has been destroyed, so far as affects the question at issue, by positive enactments in this state, and we are of the opinion that the learned circuit judge committed no error in his instructions to the jury on the subject.

The wife in this case gave the check to the defendant, and by that instrument he could readily have obtained the money it called for at the bank. It would be carrying technicality to a most dangerous extreme to hold that the proof of the mere instrumentalities of obtaining the money constituted a variance with the charge of obtaining the money itself, where the same evidence also showed the fact of obtaining the money itself. A check is a mere order for so much money, the credit of the drawer in the bank or drawee, which it is bound to honor when made in form and properly presented. The proof also showed the money was paid to the defendant.

The giving of the check by the wife to the husband and the committing of the money to be obtained thereon were merely temporary in their effect. The evidence shows that the check for the money was given by her to procure the money to purchase an interest in certain business property for her, not for himself, and thus the title in the money never passed out of the wife to the defendant, and the same continued to be her property, even when he was attempting to appropriate it to his own use and purposes. The evidence tends to show that the intent to obtain and appropriate the money was conceived from the beginning, even before the marriage, certainly before he obtained the check, and that by fraudulent artifice he inveigled her into giving him the check therefor as stated. This made the crime of larceny, and not embezzlement, as contended by appellant's counsel. The learned circuit court committed no error in its instructions to the jury in this respect.

It is objected that the act entitled "An act to authorize certain persons to testify in certain cases" (Acts of 1903, p. 141) is invalid for the reason that the bill for the act was never properly approved, and did not become a law. The journals show that it was presented to the governor on the 13th of March, and was returned by him to the senate, in which it originated, on the 17th of March, making less than five days, Sundays

excepted. The governor, however, on the last named date, said this in his communication to the senate: "Senate Bill No. 85, authorizing certain persons to testify in certain cases, became a law without my signature." The five days allowed the governor for the consideration of bills presented to him for approval or disapproval is a matter of privilege with him, until the same shall lapse, when the bills become laws. He can, of course, waive the time and notify the proper house that the bill may become a law without his signature, and that is what he did in this case. The other objection to the law because of alleged irregularities in the entries to the journal during its passage shows mere clerical errors, if anything; it sufficiently appearing what was evidently the intention of the legislature in the entire course of procedure in reference thereto.

Judgment affirmed.