Osburne *v.* State.

Opinion delivered April 28, 1930.

*Coleman & Reeder,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

SMITH, J. Appellant seeks by this appeal to reverse the judgment of the court below sentencing her to a term of nine years in the penitentiary upon the charge of murdering Maurice Osburne, her husband. The errors assigned are that the testimony is insufficient to support the verdict, and that error was committed in giving and in refusing to give certain instructions.

As to the sufficiency of the testimony, but little need be said. That the deceased was murdered—assassinated —is certain, and that his wife was present and participating in the atrocious crime appears equally so. She admitted that an illicit relation existed between herself and one J. P. Barber, and that her husband carried a $2,000 insurance policy on his life, with double liability in case of accidental death, of which she was the beneficiary.

Deceased and his brother, Charles, worked for their father in a store, and on the night of July 1, 1929, they closed the store and drove home in a car belonging to deceased. Charles jumped off the running board of the car at his own home, which was about 260 yards from that of his brother, who continued on to his home. Charles had been at home only a few minutes when he heard three shots fired, the second and third in rapid succession, following a short interval after the first. Charles left at once for the scene of the shooting, and overtook his mother, who was also on the way. They went into the house, and found Maurice lying on the kitchen floor dead. He had been shot in the face and twice in the back, and his murderer had beaten him over the head with a gun, the stock of which had been broken. There were powder burns in the back, which indicated that those shots had been fired at close range. Appellant was lying on the floor of a front room, and when deceased's mother asked, "My God, Norma, did you do this?" appellant answered, "No, he was cleaning his gun." Appellant made conflicting statements as to the manner in which her husband met his death, all of which were obviously false, and at the coroner's inquest admitted that Barber might have been at her home when the killing occurred, and that he

might have shot her husband. Barber, who was seen at the home at about sundown, fled the community, and had not been arrested at the time of the trial from which this appeal comes. The testimony was also to the effect that the furniture in the house had been rearranged to afford the assassin an unobstructed shot at deceased as he came into his home, and it was only poor markmanship which made more than one shot necessary. Had the first shot been fatal, as was, no doubt, intended, the story that deceased had shot himself while cleaning his gun would have been more plausible. This was, no doubt, the story appellant had planned to tell to explain the death of her husband, but the deceased's brother and mother arrived on the scene before time was afforded to adjust the story to the unexpected circumstances. Appellant did not testify in her own behalf at the trial from which this appeal comes, and the implication is that she fainted when her husband was shot, and was still unconscious when the deceased's brother and mother arrived; but, even so, this does not explain the conflicting and untrue statements made by appellant as to the circumstances attending the killing of her husband.

Appellant requested, but the court refused to give, an instruction numbered 4, which was to the effect that "where circumstantial evidence alone is relied upon to establish the guilt of one charged with crime, such evidence must exclude every other reasonable hypothesis except that of the guilt of the accused."

This statement of the law has been approved by this and many other courts, and it would be well to give such an instruction in a proper case. But it may be doubted whether the State relied upon circumstantial evidence alone in the instant case. It is true that no witness who testified in the case saw the killing, but numerous statements of appellant herself relating thereto were offered in evidence, and the inferences deducible therefrom were of an incriminating character. The inference is fair and reasonable from appellant's own admissions that she must have known how her husband met his death, and her

improbable and untrue statements in regard thereto support the conclusion that she was a party to his murder. There was therefore no error in refusing the instruction.

Moreover, we have held that, while an instruction of the character of the one requested should properly be given in a case where the State relies entirely on circumstantial evidence, yet the failure so to instruct the jury was not error where the jury had been instructed fully and fairly on the question of reasonable doubt and the presumption of innocence which accompanies the defendant throughout the trial, and that a conviction could not be had unless the jury found beyond a reasonable doubt that the defendant was guilty as charged. *Payne* v. *State,* 177 Ark. 413, 6 S. W. (2d) 832; *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d) 946; *Conley* v. *State,* 176 Ark. 654, 3 S. W. (2d) 980; *Whitney* v. *State,* 176 Ark. 771, 4 S. W. (2d) 9; *Barton* v. *State,* 175 Ark. 120, 298 S. W. 867; *Bost* v. *State,* 140 Ark. 254, 215 S. W. 615; *Thompson* v. *State,* 130 Ark. 217, 197 S. W. 21; *Jones* v. *State,* 61 Ark. 88, 32 S. W. 81; *Reed* v. *State,* 54 Ark. 621, 16 S. W. 819; *Green* v. *State,* 38 Ark. 304. Instructions to this effect were given in the instant case, and we conclude therefore that no error was committed in refusing to give instruction numbered 4.

Exceptions were saved to the giving of instructions numbered 6, 7 and 9. Instruction numbered 6 declared the law if appellant herself fired the fatal shots, while instructions numbered 7 and 9 declared the law if it were found that Barber fired them. The objection to these instructions is that they are abstract. We do not think so. The instructions go to the very heart of the case. No one could know whether appellant herself fired the fatal shots, or stood by and aided Barber to do so, but she was equally guilty in either event, and it was proper for the court to so declare the law, and this the instructions did. The instructions were not abstract, as we think it sufficiently appears, from the facts already stated, that, if appellant did not kill her husband—and she may not have done so—

she was nevertheless present, aiding and abetting the person who did.

No error appears, and the judgment must be affirmed, and it is so ordered.