DRAPER *v.* STATE.

Crim. 3982.

Opinion delivered May 4, 1936.

*H. A. Tucker* and *Calvin Sellers,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams* and *J. F. Koone,* Assistants, for appellee.

HUMPHREYS, J.   Appellant was indicted, tried and convicted in the circuit court of Garland County of murder in the first degree for killing Tom Menser in March, 1935, and the death penalty was imposed by the jury, from which judgment of conviction an appeal has been duly prosecuted to this court.

The chief witness for the State was Roy House, the accomplice of appellant, who testified, in substance, that he and appellant entered into an agreement on Friday night to rob Tom Menser, who resided on highway 70, some nineteen or twenty miles west of Hot Springs; that

they stopped about a mile and a quarter before reaching Menser's home and built a fire, where they remained for some time; that they planned for appellant to grab and hold Menser when they entered the house while he, witness, would search and rob him; that pursuant to the agreement, they drove the car beyond Menser's house about a quarter of a mile and parked it; that they walked back on the highway and entered the yard, and walked around the house to the back door, and when they made themselves known, Menser invited them in and asked both of them to take seats by the fire; that witness and Menser sat down, but that appellant walked around behind Menser and struck him with a wrench he had brought from the car and beat him to death; that before entering the house, appellant put on some old gloves; that after beating Menser to death, appellant ordered witness to search the dead man, which he did; that appellant then searched a trunk in the room and witness a table, where he found $8; that appellant found a watch and gun in or near a bed; that they counted the money and left the house and went around through the field and out to the car; that they drove on toward the Duncan's where appellant was residing with his aunt; that when near there, he, witness, got out and remained in the woods near the house until about three o'clock Saturday afternoon; that appellant met him Sunday and took the watch and gun and let witness keep the money; that he advised witness to leave the country, which he did, going to Columbus, Georgia, where he had planned to go before; that after about two months, his brother, Carl House, came to him in Georgia and that they traveled through a number of States together until they reached Texas, where witness was arrested and brought back to Garland county; that about a week later his brother returned.

Carl House testified, in substance, that on Sunday after the killing, being worried about his brother and knowing that appellant and his brother were out together on Friday night, and suspecting that maybe they had killed and robbed Menser, of whose death he had heard, he went to appellant's house and made inquiry

about his brother and whether they were implicated in the murder, and appellant admitted they were connected with it, and that they had divided the loot, he keeping the gun and watch, and Roy the money; that he showed him the watch and gun; that he recognized the watch as Menser's; that he, witness, afterwards told appellant that the officers had taken finger prints in the home where Menser was killed, and also told appellant they would get them and appellant replied they would not get him as he had on gloves at the time.

Many witnesses testified in the case. Two testified that they observed tracks of two persons going out into the field around Menser's house.

In order to decide the assignments of error argued and insisted upon for a reversal of the judgment, we do not deem it necessary to make a detailed statement of the testimony of the two witnesses named or any of the others. Suffice it to say the evidence of Roy House is ample to sustain the verdict of murder in the first degree if sufficiently corroborated. There is no question made that the testimony of Carl House fails to support that of Roy House, but appellant makes the contention that Carl House is, himself, an accomplice, and that the law is that one accomplice cannot corroborate the testimony of another accomplice under the rule that one charged with crime cannot be convicted on the uncorroborated testimony of an accomplice. Carl House was not an accomplice in the instant case although he concealed from the officers the information he received from appellant concerning the participation of appellant and his brother in the crime. He could not have disclosed the information he received from appellant without disclosing the guilt of his brother, Roy House. Section 2313 of Crawford & Moses' Digest is, in part, as follows: "* * *, provided, that persons standing to the accused in the relation of * * * brother * * * shall not be deemed accessories after the fact, unless they resist the lawful arrest of such offenders." *Edmondson* v. *State*, 51 Ark. 115, 10 S. W. 21.

Not, therefore, being an accomplice, in view of his relationship to Roy House, in the instant case, his testi-

mony sufficiently corroborated that of Roy House to sustain the conviction.

The appellant also assigns as reversible error the giving of instruction No. 13, which is as follows: "If the jury believe that any witness has testified falsely in any respect, you may wholly disregard all the testimony of said witness or you may believe that part of his testimony which you believe to be true, and disregard that part of his testimony which you believe to be false."

The wording of the instruction was not an accurate statement of the law, but the omitted words complained of would likely have been inserted had the court's attention been called to it by a specific objection. Only a general objection was interposed to the instruction. In the case of *Flake* v. *State*, 161 Ark. 214, 255 S. W. 885, in summing up the ruling on similar instructions to the one objected to in the instant case, the court said: "Therefore, the effect of all these holdings of our court is that an instruction couched in language like that here under review, or of the same purport, does not strictly and accurately state the law, but the refusing of such an instruction is not reversible error, because it is not error for the trial court to refuse an instruction that does not correctly declare the law. And the giving of such an instruction is not error in the absence of an objection calling attention to the specific language to which the objection is made and which is claimed to be erroneous and misleading."

Appellant also assigns as reversible error the refusal of the court to give his requested instruction No. 1, which is as follows: "You are instructed that where the State depends in part upon circumstantial evidence for corroboration of the testimony of an accomplice the chain of circumstances must be wholly inconsistent with defendant's innocence, and must be so convincing of defendant's guilt as to exclude every other reasonable hypothesis, and it must establish in the minds of the jury an abiding conviction to a moral certainty of the truth of the charge."

The rule contended for in this instruction is not correct and does not square with the rule announced in the

cases of *Osburne* v. *State,* 181 Ark. 661, 27 S. W. (2d) 783, and *Daniels* v. *State,* 186 Ark. 255, 53 S. W. (2d) 231.

Appellant also assigns as reversible error the admission of the testimony of Roy House, his co-conspirator, before requiring the State to introduce evidence tending to show a conspiracy between them. No prejudice resulted to appellant on this account because the evidence in the whole case is sufficient to show a conspiracy. *Hearne* v. *State,* 121 Ark. 460, 181 S. W. 291.

Appellant also assigns as reversible error the action of the court in permitting the deputy prosecuting attorney to say in his argument that "efforts were made to take finger prints in the room where the deceased, Tom Menser, was killed." There was testimony in the case to the effect that appellant put on gloves before going into the room, and when informed by Carl House that they were taking finger prints and would get "you fellows," appellant answered, "No they won't," and pulled from his front pocket an old pair of dress gloves, worn badly, greasy and dirty. We think the deputy had a right to comment on this testimony in an effort to show why the finger prints of appellant were not found in the room.

No error appearing, the judgment is affirmed.