BRADFORD, EXECUTOR, *v.* REID.

4-6277                                                    149 S. W. 2d 51

Opinion delivered March 31, 1941.

*Harry B. Colay* and *J. L. Davis,* for appellant.

*W. P. Strait,* for appellee.

MEHAFFY, J.   This is a suit by the appellee on a claim against the estate of Dr. J. H. Colay, deceased, and therefore the appellee was not a competent witness to testify to transactions with, and statements made by, the intestate in reference to the matter in controversy.   Section 5154, Pope's Digest.

This court has construed this statute many times, one of the late cases being *Graves* v. *Bowles,* 190 Ark.

579, 79 S. W. 2d 995. The court there said: "While the burden of proof is upon the claimant to show such facts as would justify the court in implying that there was a contract to be performed, he cannot do so by his own testimony when it violates the above mentioned statute."

The appellee filed her claim against the estate of Dr. Colay and attached a canceled check for $500 which she testified was a loan to Dr. Colay.

The appellant objected to the testimony of appellee and the trial court evidently took the view that her testimony was not sufficient to prove her claim, and the court therefore stated: "I would advise you, if you are sincere in your objection, not to introduce any testimony." The attorney said he was sincere; that it was the contention of the appellant that the check was given in payment of services rendered by Dr. Colay to Mrs. Reid.

The appellant thereupon introduced Miss Pauline Kendrick. She testified that she was the bookkeeper and office girl for Dr. Colay during his lifetime; that she began working on August 1, 1938, and worked for him until his death on August 15, 1939, and made most of the entries in the books. She was then handed a book and asked if that was the book kept in the office of Dr. Colay, and she answered that it was; that the entries were in his handwriting until she began to work for him. She was then asked what the book showed, and the appellee objected, and witness was asked if she entered on that book such items as Dr. Colay gave her to enter, and she said that she did; that all she knew about the correctness of these items is that Dr. Colay gave them to her to enter on the book; she made the entries on the book on instructions from the doctor. She further testified that she was in the office the day the check was given by Mrs. Reid to Dr. Colay; she was not in the private office, but was in the outer office when Mrs. Reid came out, and Dr. Colay told her to mark Mrs. Reid's account paid in full, that she had paid him $500; the item was not dated, but simply marked "paid in full." She also testified that the doctor told her the $50 cash from him was money Mrs. Reid borrowed; she balanced the book after Dr. Colay's

death, and it showed a balance of $52.50. On the day that Mrs. Reid gave him the $500, he told witness to mark the account paid in full, and she did that, and he said she gave the $500 for medical services and other work. None of these statements was made to witness in the presence of the appellee.

Here appellant introduced page 36 of the account book of Dr. Colay. This account, as shown by the books, began in 1937, about a year before the secretary went to work for him, and continued down to April 28, 1939, and after that was marked "paid in full." This account shows numerous charges, something over 20, for services and also shows several payments made at different times, reducing the amount that the book showed Mrs. Reid owed Dr. Colay, approximately $34 on the day he received the check for $500.

There are no other items on the books, no other charges against Mrs. Reid. It therefore appears from the evidence introduced by appellant, that her account was approximately $34 at the time the $500 check was given, and there is no evidence in the record that the appellee owed Dr. Colay any other amounts. If he had any other charges against her, they would evidently have been shown on the books.

The appellee testified that at the time she loaned him the $500 she paid her account. There is no evidence as to how she paid it, whether by check or cash. The evidence also shows that Mrs. Reid had received money from the insurance company after the death of her husband, and it was with this insurance money that she paid her account and loaned the doctor $500.

The evidence, therefore, shows conclusively without the appellee's testimony that at the time Mrs. Reid gave the check for $500 she owed the doctor approximately $34, and this is evidence introduced by the appellant. There is some evidence that the doctor advised her and helped her with ordering lumber for her building, but the evidence also shows, by appellant's witnesses, that the doctor did not pay anything to the lumber companies, but that it was all paid by Mrs. Reid.

The probate judge found in favor of appellee, and the case is here on appeal.

The question is whether there is sufficient evidence to sustain the finding of the lower court that this $500 was a loan, and not the payment of a debt.

It is stated in 5 R. C. L. 486: "It is undoubtedly the general rule that in the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as a loan. A check, on its face, is a mere order to another to pay money; it does not by its terms settle the question whether the money was to pay a debt or was a loan. The presumption that it was to pay a debt arises, like other presumptions, from the ordinary course of business; it puts the party to show that in the case in hand the ordinary course of business was departed from. It is to be remembered that the presumption is one of fact, a mere rule of argument, proceeding from convenience, the common experience being that a check drawn on a bank of deposit is much more frequently a means of payment than otherwise; and the presumption is overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was in fact a loan."

The same rule is announced in a note on page 1203, Ann. Cas. 1913D; Jones Commentaries on Evidence, Vol. 1, p. 392.

The witnesses for appellant having testified that the account was paid in full, it was competent for the appellee to testify that it was paid in addition to the $500 loan.

In the case of *Nay* v. *Curley,* 113 N. Y. 575, 21 N. E. 698, the New York court said: "If, in substance, the fact sought to be elicited respects a personal transaction, and tends directly to disclose a personal transaction, or the presence or absence of some element in a personal transaction, then the fact is not, we think, an independent one, and the survivor is precluded from testifying to it, unless the way is opened by his examination by the other party. *Tooley* v. *Bacon,* 70 N. Y. 34; *Maverick* v. *Marvel,* 90 N. Y. 656; *Koehler* v. *Adler,* [70 N. Y. 287] *supra; Lerche* v. *Brasher,* 104 N. Y. 157, 10 N. E. 58; *Clift* v. *Moses,* 112

N. Y. 426, 20 N. E. 392. The examination of the defendant by the plaintiffs as to the existence of a debt between the witness and the intestate when the check was given, directly bore upon the nature and character of the transaction, and was an indirect method of proving the transaction itself. They therefore made the defendant a competent witness to testify in his own behalf as to the same transaction.''

The law seems to be well settled that the presumption that a check was given for the payment of a debt is overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was, in fact, a loan.

We think the facts and circumstances introduced by the appellant overcome the presumption, and show that the check was given as a loan and not in payment of a debt.

Affirmed.