BRASHEARS *v.* STATE.

4243 160 S. W. 2d 505

Opinion delivered March 16, 1942.

Appeal from Madison Circuit Court; *J. W. Trimble,* Judge; affirmed.

*Harvey G. Combs, Rex W. Perkins* and *G. T. Sullins,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J.   It was alleged in the indictment, on which appellant was tried, that he had forged a school warrant on School District No. 103 of Madison county for the sum of $65.  He was convicted and sentenced to a term of three years in the penitentiary, and from that judgment is this appeal.

The warrant alleged to have been forged as copied in the indictment was signed by the president and secretary of the school board only, and a demurrer was interposed upon the ground that the warrant was invalid for the reason that it was not countersigned by the county examiner, and was not, therefore, the subject of forgery. The demurrer was overruled, and the same question was raised in the motion filed in arrest of judgment, which was also overruled.

By subdivision (1) of § 18 of act 327 of the Acts of 1941, p. 853, it is made the duty of the county supervisor of schools to countersign all warrants issued by the boards of directors of the various school districts.  But this act was passed subsequent to the date of the commission of the alleged offense.

It may be true that under legislation in force prior to the passage of the act of 1941, *supra,* the warrant should have been countersigned by the county examiner, the school officer whose duties were transferred by the

act of 1941 to the county supervisor. But, even so, it does not follow that the county treasurer could forge the names of the president and secretary of the school district and escape prosecution because the name of the county examiner was not also forged upon the theory that the warrant was invalid unless countersigned by the county examiner, and that a warrant not so countersigned was not the subject of forgery.

The theory of the prosecution in this case is that the president and secretary of the school board did not sign the warrant in question, and that their signatures were forged by appellant. The purpose of the law in requiring school warrants to be countersigned was, primarily, to protect the funds of the school districts against which warrants were drawn and, incidentally, to protect the treasurer upon whom the warrants are drawn in paying them. The warrant in question sufficed to appropriate and disburse $65 of the funds of the school district, for which the treasurer asks, or will ask, credit in his settlement. This warrant was not a worthless piece of paper. It got results by withdrawing $65 of the school funds in the hands of the county treasurer, and appellant was the treasurer.

The statute (§ 3094, Pope's Digest) provides: "If any person shall forge or counterfeit any writing whatever, whereby fraudulently to obtain the possession or to deprive another of any money or property, or cause him to be injured in his estate or lawful rights, . . ., he shall, on conviction, be confined in the penitentiary not less than two nor more than ten years."

If appellant forged the names of the president and secretary of the school district board, he violated this statute, although he did not also forge the name of the county examiner, and both the demurrer and the motion in arrest of judgment were properly overruled.

The serious question in the case is whether error was committed in the admission of certain testimony. It appears that many school warrants drawn on the treasurer were cashed by the First National Bank of Huntsville, and the practice appears to have been for the treasurer,

from time to time, to pay the bank for warrants so cashed by drawing his check against his official account as treasurer with the bank.

On December 28, 1940, appellant redeemed, or paid, 39 school warrants which the bank had thus cashed by drawing three separate checks totaling $1,254.50 against his official account with the bank. The validity of these warrants is not questioned. There was another batch of warrants, 32 in number, as to which the record is somewhat confused. The insistence is that all of these 32 warrants were forged. They were for the total amount of $1,254.36, and testimony was offered by school directors whose names appear to have been signed to these 32 warrants that their signatures were forgeries. This testimony was admitted over the objection of appellant as incompetent, and the court ruled that it would be admitted "temporarily," but would be excluded later if its competency was not shown. To save time, it was stipulated as follows: "It is agreed between counsel for the state and for the defendant that as to warrants on school districts numbered as follows: 34, 35, 37, 42, 43, 49, 50, 55, 60 and double 60, 3rd 60, No. 61, 68, 69, 84, 85, 88, 91, 95, 97, 99, 109, that if the persons whose names appear thereon as makers and that the persons whose names appear thereon as payees and indorsers if present and testifying before the jury each and all of such makers, payees and indorsers would testify that such signatures appearing thereon were not executed by the persons whose names appear either as maker, payee or indorser, and that such signatures were not affixed to said warrants with the knowledge, permission or consent of said persons whose names appear as such makers, payees or indorsers; that said persons nor any of them have any knowledge as to the execution, delivery and indorsement of said warrants or any of them."

The 32 warrants had the apparent stamp of the bank, indicating that they, too, had been cashed by the bank; but the testimony of the cashier of the bank was to the effect that they had not been, although they had the stamp which the bank placed on warrants or checks which it had cashed. This official of the bank testified that ink

of a color not used in the bank for many years had been used in stamping the 32 warrants. The purpose of this testimony was to show a system which appellant had employed in converting to his own use funds of the various school districts, and the auditors who made an audit of the treasurer's books testified that unless appellant was given credit for these 32 warrants his accounts with the various school districts involved would not balance.

After admitting this testimony "temporarily," the court made no other or additional ruling in regard to it, and gave no instruction as to the purpose for which the jury might consider it. But no such ruling was later asked, although objection was made to the admission of this testimony when it was offered. The connection which the court ruled would be required to connect appellant with them was apparently made, to present a question for the consideration of the jury, and had appellant wished the jury told the limited consideration which the jury might give this testimony a ruling should have been invoked and a proper instruction asked. But no such instruction was asked, and under our practice complaint cannot be made of the failure to give an instruction which was not requested.

In the case of *Scott* v. *State,* 77 Ark. 455, 92 S. W. 241, it was said: "Counsel for defendant says that the court erred in failing to charge the jury that a conviction for perjury cannot be had save on the testimony of two credible witnesses, or on that of one witness corroborated by other evidence, showing that the statements of defendants on oath for which he was indicted were in fact false. But defendant asked no such instruction. The cases he cites from Texas which hold that it is a fatal error for the court to omit giving such an instruction, even though not requested, are in conflict with the general rule and with the decisions in this state, and cannot be followed here. As the defendant asked for no instruction on that point, he has, under our practice, no right to complain that the court did not give it. *White* v. *McCracken,* 60 Ark. 613, 31 S. W. 882; *Fordyce* v. *Jackson,* 56 Ark. 594, 20 S. W. 528." See, also, *Holt* v. *State,* 47 Ark. 196, 1 S. W. 61; *Lackey* v. *State,* 67 Ark. 416, 55

S. W. 213; *Vassar* v. *State,* 75 Ark. 373, 87 S. W. 635; *Lucius* v. *State,* 116 Ark. 260, 170 S. W. 1016; *Lowmack* v. *State,* 178 Ark. 928, 12 S. W. 2d 909. We have many other cases to the same effect.

In the case of *Scrape* v. *State,* 189 Ark. 221, 71 S. W. 2d 460, it was said that we have many times held that evidence of similar crimes closely connected with the crime charged is admissible, not only to show knowledge or intent, but also to show a system, plan or scheme of conduct on the part of the accused, although it is the law that evidence of other crimes is not admissible to prove guilt of the particular crime for which the accused is on trial, for the reason that the state cannot resort to proof of bad character as a circumstance from which guilt may be inferred.

But the state's case does not rest upon this testimony alone. Comparisons were made between admitted writings of appellant and the forged names, and witnesses, including two handwriting experts, testified that the forged signatures were in appellant's handwriting.

Objection was made to permitting the use of the 32 forged warrants for purposes of comparison, for the reason that appellant's successor in office had permitted the prosecuting attorney, without an order of court, to withdraw the warrants from his files and send them to the handwriting experts in Kansas City, Missouri. However irregular it may have been to have permitted the withdrawal of the warrants from the files of the legal custodian, that official testified that the warrants were in the same condition when returned to him as they were when he delivered them to the prosecuting attorney. The warrants were offered in evidence, and the experts demonstrated the tests which they had made upon which they based their opinions. This testimony was sufficient to present to the jury the question of the authorship of the forged warrants.

Error is assigned in the refusal of the court to give an instruction on the sufficiency of circumstantial evidence to sustain a conviction.

The opinion in the case of *Holland* v. *State,* 198 Ark. 933, 132 S. W. 2d 190, quoted from the case of *Daniels* v. *State,* 186 Ark. 255, 53 S. W. 2d 231, as follows: " 'Another instruction was refused which told the jury they could not convict unless the offense had been established to the exclusion of every other reasonable hypothesis of the defendant's innocence. The court gave at the request of the appellant correct instructions on the presumption of innocence and reasonable doubt, and, as the state did not rely entirely upon circumstantial evidence, it was not error to modify the instruction in the particular mentioned above or to refuse to grant the other. *Osburn* v. *State,* 181 Ark. 661, 27 S. W. 2d 783, and cases therein cited.' "

Here, as there, the state's case did not depend entirely (if at all) upon circumstantial evidence, and the jury was fully instructed on the presumption of innocence and the law as to a reasonable doubt, and there was, therefore, no error in refusing the requested instruction.

The testimony is sufficient to sustain the conviction, and as no error appears the judgment must be affirmed, and it is so ordered.