Alvin MAYES *v.* STATE of Arkansas

CR 78-60                             571 S.W. 2d 420

Opinion delivered October 2, 1978
(In Banc)

284

*Raymond R. Roberts,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Alvin Mayes was found guilty of the crime of forgery in violation of Ark. Stat. Ann. § 41-2302 (Repl. 1977) in a trial before the Circuit Court of Saline County, without a jury. The charge was based upon the presentation of a check to a Ms. Cash, the cashier at a

check-out counter in West's Department Store in Benton. Mayes was arrested by Benton Police Officer Barnes after he had been given a description of the person presenting the check by Ms. Cash and Mr. Galion, the manager of the store. Appellant urges three points for reversal. We find it necessary to reverse the judgment because of the admission of a confession by appellant into evidence.

Among other contentions made by appellant, he argues that after he had indicated that he wanted to remain silent, the police officers having him in custody persisted in questioning him, without giving him any warnings of his constitutional rights as to self-incrimination and the assistance of counsel. The undisputed evidence sustains this argument. Officer Barnes testified that, after the arrest, he had interviewed Mayes about his possession of certain checks, among which was the one on which the charge in this case was based. Barnes stated that he had given a full explanation to Mayes of his rights under the *Miranda* decision and that, although Mayes had been drinking, he not only expressed an understanding of the rights statement but also exhibited an ability to understand it. He could not remember Mayes having said that he wanted to call a lawyer, but admitted that it was possible that he might have. More importantly, however, a written statement was given by Mayes at 3:38 p.m., after interrogation off and on by Barnes, following the advice given Mayes as to constitutional rights some five hours earlier. Mayes indicated when the questioning first started that he didn't want to talk to Barnes, but Barnes and other officers continued questioning him during several interviews without any further advice as to his constitutional rights. This was a clear violation of the mandate of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Webb* v. *State,* 258 Ark. 96, 522 S.W. 2d 406. The finding of the trial judge to the contrary was clearly against the preponderance of the evidence.

We must consider other points relied upon by appellant because they will probably arise on a new trial. We find no merit in appellant's contention that the trial court erred in allowing the in-court identification of him by Ms. Cash as the person who presented the check. He also objects to her having been permitted to refer to an out-of-court identification

made by her. This argument is based upon the contention that her identification testimony was tainted by improper pretrial identification procedures and that his arrest without a warrant was without probable cause.

The arresting officer was Barnes. He had come into the store in response to a report to the police department by Galion, to whom Ms. Cash had taken the check when it was presented, as she was required to do whenever a check was presented. Barnes arrived a little more than ten minutes after the report was made. Barnes testified that Ms. Cash and Mr. Galion told him that the person who presented the check was a black man wearing a dark coat and bright pink britches. As soon as Barnes heard this description, he recalled having met a black man so dressed as he entered the store. Barnes immediately left in search of this man. At the Wal-Mart parking lot about eight or ten blocks from the West store, he found Mayes, dressed according to the description given him. This occurred within five minutes after Barnes had seen the man leaving West's store. Since he wanted to be certain he had the right person before taking him to the police station, Barnes took Mayes back to the store, arriving there within ten minutes after he had made the arrest. Both witnesses viewed Mayes as he stood outside a police automobile and identified him, without hesitancy or confusion, as the man who had presented the check.

Ms. Cash's identification of Mayes in the courtroom was positive and unequivocal. She said that she had gotten a pretty good look at the face of the person who offered the check and then had an opportunity to note the clothing he wore and his size and race, adding that he was only two feet from her, across the check-out counter. She said that, when she was given the check, she observed the person who handed it to her for 15 to 30 seconds and that he remained at the counter for about two minutes. She said that, when the officers asked her to view the suspect they had in custody, she went outside the store, looked at the man from a distance of about 30 feet and that she was certain that the man she then saw was the man who had given her the check.

Appellant argues that, essentially, Ms. Cash, a white woman, only identified a black man and that, according to an

article published by a psychology professor at the University of Tulsa, identification of members of one race by one of another race is particularly unreliable. He also suggests that Ms. Cash's identification testimony was further tainted because she had seen Mayes at a previous hearing. Ms. Cash positively denied that she had, on any occasion, identified Mayes simply on the basis that he was a black man and stated that she was certain of his identification at the previous hearing.

Many factors are to be considered in determining whether an in-court identification is tainted by pretrial occurrences. Among them are: the opportunity of the witness to observe the criminal act and the perpetrator of it at the time; the existence of discrepancies in pre-confrontation descriptions and the accused's actual description; any pretrial misidentification; lapse of time between the alleged criminal act and any lineup or "show-up" identification; the facts disclosed concerning a "show-up" or lineup, and the certainty of the identification of the accused by the witness. *Hinton* v. *State,* 260 Ark. 42, 537 S.W. 2d 800; *Sims* v. *State,* 258 Ark. 940, 530 S.W. 2d 182; *Warren* v. *State,* 261 Ark. 173, 547 S.W. 2d 392; *McCraw* v. *State,* 262 Ark. 707, 561 S.W. 2d 71. The central question is whether, viewing the totality of the circumstances, the courtroom identification was reliable, even if the "show-up" procedure was unduly suggestive, and we must resolve any questions of credibility as the trial judge did. *Hinton* v. *State,* supra; *McCraw* v. *State,* supra. It is only when we can say, after viewing the totality of the circumstances pertaining to an in-court identification, that it was patently unreliable that we hold the identification inadmissible as a matter of law. *Synoground* v. *State,* 260 Ark. 756, 543 S.W. 2d 935.

When we view the totality of the circumstances here, we cannot say that the trial judge erred in finding it sufficiently reliable to be admitted in evidence and the question of reliability then became one for the trier of fact. See *Synoground* v. *State,* supra. We cannot say that it did not constitute substantial evidence that Mayes was the person who presented the check.

Although we are convinced that Barnes had probable cause to arrest Mayes, this factor would not be of any impor-

tance if Ms. Cash's in-court identification was not tainted by her viewing appellant within a few minutes after that arrest. See *Wright* v. *State,* 258 Ark. 651, 528 S.W. 2d 905. So we need not consider probable cause.

A more important question is raised by appellant's contention that the evidence was insufficient to support the finding that he was guilty of uttering. The reason given by appellant in stating this point is that the court had ruled as a matter of law that there was no evidence of forgery and had, according to appellant, actually acquitted appellant of the crime of forgery. This was not the exact effect of that which took place in the trial court. At the conclusion of the state's evidence, the trial judge denied appellant's motion for a verdict of acquittal, but when his attorneys protested that there had not been any evidence of forgery, the judge stated that he would grant that motion. Appellant's attorney then stated: "If there is no forgery, I do not see how there could be any possession" and the judge responded: "I think uttering would be included in the charge of forgery." When appellant's attorney argued that appellant had been charged with possession, not uttering, the judge agreed with the deputy prosecuting attorney's statement that possession of a forged instrument and uttering were offenses of exactly the same grade defined exactly by the same statute in the language of one sentence, and that they were the same offense under the statute mentioned in the information filed and that it was inconceivable that appellant could have uttered something that he did not possess immediately theretofore. Appellant's attorney then asserted that the check was only a piece of paper and amounted to nothing because the check bore no signature. After some additional colloquy among the judge and counsel, the circuit judge stated that he still considered uttering as a lesser charge than forgery, explaining that he was saying that uttering was included in the offense, which had been labelled forgery. Appellant then rested, without offering any testimony, and then renewed his motion. The court then found appellant guilty of uttering an instrument and sentenced him to three years in the penitentiary.

We agree with the trial judge in principle, and, even though appellant's contentions might have been meritorious prior to the adoption of the Arkansas Criminal Code, they are

not well taken under the statute now applicable. That statute is Ark. Stat. Ann. § 41-2302 (Repl. 1977). The crime of forgery is much broader in scope than under previous statutes and the crimes previously known as forgery and uttering, formerly held to be separate offenses, are now included under the broad category of "forgery." Consequently, when the state charged appellant with forgery, the charge was broad enough to cover the crimes previously known as forgery, uttering and possession of a forged instrument. See Commentary, § 41-2302. Any of these acts constitutes the single crime of forgery. See *State* v. *Morse*, 38 Wash. 2d 927, 234 P. 2d 478 (1951). Under the statute, one forges a written instrument if with purpose to defraud, he draws, makes, completes, counterfeits, possesses or utters a written instrument that *purports to be* or is *calculated to become*, or *to represent if completed*, the act of a person who did not authorize the act. Sec. 41-2302 (1).

One commits forgery in the second degree if he forges a written instrument that is a *check*. He also commits forgery if he forges a written instrument that *does* or *may evidence, create, transfer, terminate* or *otherwise affect* a legal right, interest, obligation or status. As we interpret the trial judge's statements, he properly applied the statute and held that the evidence was not sufficient to show that appellant had drawn, made, completed, altered or counterfeited the instrument presented, but that it did show that he had uttered it. The meaning of the word "utter" in the applicable section is broad enough to cover the delivery, or attempted delivery, of a written instrument to another person. Ark. Stat. Ann. § 41-2301 (Repl. 1977).

There are certain elements of the crime which were shown beyond any doubt by the undisputed evidence. The person who presented the check delivered or attempted to deliver it to Ms. Cash. The intent to defraud was clearly shown by the actions of this person who appeared in the check-out line with certain merchandise, presented the check and, after Ms. Cash took the check to the store manager, left the store before she returned.

Appellant argues, however, that there was no evidence the instrument was forged or that he knew that it was forg-

ed, and states, without argument or citation of authority, that the check lacks legal efficacy, because it did not bear a drawer's signature. There was clearly sufficient evidence that the instrument had been forged. If the identification of appellant as Alvin Mayes was sufficient, he was certainly not Phillip Watson, who was named as payee in the check. Mayes never claimed to be Phillip Watson after he was arrested. Officer Barnes obtained information from the person he arrested as to his name and date of birth. Barnes checked this information through the National Crime Information Center and the identity of Mayes was confirmed. The address of the payee was shown on the face of the check as 2722 Cross, Little Rock, Arkansas 72206. Oddly enough, the endorsement included the street address and a telephone number, apparently in the same handwriting as the signature. The officers were unable to locate a Phillip Watson, although they enlisted the assistance of the Little Rock Police Department and the telephone company. The name of Phillip Watson was the only one endorsed on the check. The conclusion that Phillip Watson was a fictitious person was not unwarranted. The fact that the person who presented the check left without its being honored or returned to him is also significant, particularly in view of the fact that no accusation had been made, as showing consciousness of guilt. *People* v. *Jones,* 210 Cal. App. 2d 805, 27 Cal. Rptr. 35 (1962). The evidence may not be as fully developed as it might have been, and it is not conclusive or overwhelming, but we cannot say that there is no substantial evidence that the instrument was forged, as the crime is defined. An instrument may be forged by signing the name of a fictitious person. *Moore* v. *State,* 241 Ark. 335, 407 S.W. 2d 744. Actually, possession of a forged instrument by one who offers or seeks to utter it without any reasonable explanation of the manner in which he acquired it warrants an inference that the possessor committed the forgery or was a guilty accessory to its commission. *State* v. *Phillips,* 127 Mont. 381, 264 P. 2d 1009 (1953).

The questions raised as to the legal efficacy of the check can better be understood by reference to it, so it is reproduced as an appendix to this opinion. Appellant's argument is addressed to the lack of any handwritten or facsimile signature under the printed name of the drawer, Adco Realty Company. Appellant does not argue that this check is not a

written instrument under the statute, but this has been suggested during our deliberations. The definition of "written instrument," for the purpose of the applicable statute, is "any paper, document or other material containing written or printed matter or its equivalent." Ark. Stat. Ann. § 41-2301 (9) (Repl. 1977). The remaining language of that subsection is not a limitation on the quoted language. The additional language, "and shall include any money, token, stamp, seal, badge, trademark or other evidence or symbol of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of any person" does not purport to be an exclusive enumeration of written instruments or to limit the words first quoted. If anything, it broadens the scope of the definition rather than narrow it. Thus, nothing in the definition of "written instrument" excludes this check. Furthermore, a check need not be negotiable in order to come within the purview of the act, and it is recognized that not all checks are negotiable instruments. Ark. Stat. Ann. § 85-3-104 (3) (Add. 1961). A check is simply "a written order directing a bank or banker to pay money as therein stated." Webster's New International Dictionary (2d Ed.); Webster's Third New International Dictionary. See also, *Hunt* v. *State,* 72 Ark. 241, 79 S.W. 769; *Bradford* v. *Reid,* 202 Ark. 108, 149 S.W. 2d 51. A bank check has been defined as a written order or request, addressed to a bank or persons carrying on the business of banking, by a party having money in their hands, desiring them to pay on presentment, to a person therein named or bearer, or to such person or order, a named sum of money. *Keese* v. *State,* 223 Ark. 261, 265 S.W. 2d 542.

The printing of a name where a signature should appear is a sufficient signature, if it is intended as such. *Ragge* v. *Bryan,* 249 Ark. 164, 458 S.W. 2d 403; *Leach* v. *Bald Knob State Bank,* 163 Ark. 91, 259 S.W. 3. Furthermore, a party may use a firm name as a signature. *Walker* v. *Emrich,* 212 Ark. 598, 206 S.W. 2d 769. So it cannot be said that the check was without a signature. Even if it is not a check, it is certainly a written instrument that *may* evidence, create, transfer or otherwise affect a legal right, interest or status. Had the cashier or manager accepted the check, the West company, the bank on which it was drawn or Adco Realty Company would or might have suffered a loss and might have had a

legal right, interest or status affected. The ultimate impact of the loss would depend upon the point at which the infirmity of the instrument was detected. Furthermore, even if we say that this instrument is not a check because the drawer's signature is only printed, it certainly is a paper, document or other material containing written or printed matter or its equivalent, that purports to be or is calculated to become or to represent if completed, the act of a person who did not authorize the act. This is all that is required.

Although the question of apparent legal efficacy may have been pertinent under previous law, the matter is at least doubtful under our earlier decisions. See *Van Horne* v. *State,* 5 Ark. 349; *Brashears* v. *State,* 203 Ark. 1014, 160 S.W. 2d 505. Regardless of the requirement under the law prior to the adoption of § 41-2302, this is not a requirement under that section. The delivery, or attempted delivery, of a paper, document or other material containing written or printed matter or its equivalent that purports to be or is calculated to become, or to represent if completed, the act of a person who did not authorize the act and that may evidence, create, transfer or otherwise affect a legal right, interest, or status constitutes uttering under that section. It is clear that the concept of the crime is a much broader one than it was under prior law. This statute brings our law into harmony with case law on the subject in other jurisdictions.

The California Supreme Court early took the position that the essential ingredients of forgery were: (1) a false making of some instrument; (2) a fraudulent intent; (3) if genuine, it would be sufficient to form the basis of a legal liability. *People* v. *Munroe,* 100 Cal. 664, 35 P. 2d 326, 24 LRA 33 (1893). The California court then said that the requirements of the statute[1] did not demand its earlier construction and that its adoption would result in the escape from justice of many criminals. The potential for loss by voluntary payment by some innocent person was noted and the fact that the forged paper was such as might defraud another was emphasized by the court. This action has been

---

[1] The California statute quoted in the opinion described the offense much more narrowly than our present statute does. Its language is more like that of our previous forgery statute.

followed in California ever since. In *People* v. *Brown,* 101 Cal. App. 2d 740, 226 P. 2d 647 (1959), it was said that it is sufficient that the instrument may possibly deceive another and that it was prepared with intent to deceive and defraud another. It is now uniformly recognized in that state that the mere fact that an instrument is legally unenforceable is not a defense so long as upon its face it *may* have the effect of defrauding one who acts upon it as genuine. *People* v. *Jones,* 210 Cal. App. 2d 805, 27 Cal. Rptr. 35 (1962). The real intent of statutes such as ours was well stated in the case just cited, viz:

> The purpose of the statute against forgery is to protect society against the fabrication, falsification and the uttering of instruments which *might* be acted upon as being genuine. The law should protect, in this respect, the members of the community who may be ignorant or gullible as well as those who are cautious and aware of the legal requirements of a genuine instrument. An instrument is not the subject matter of forgery only where it is so defective on its face that, as a matter of law, it is not capable of defrauding anyone. The instrument which was uttered by defendant in this case might on its face have easily defrauded someone. In fact, it would have been legally enforceable in its incomplete state if, as it represented, there was in fact an underlying debt. [Emphasis ours.]

That there are writings which could not possibly operate to defraud anyone and thus do not come within the purview of forgery statutes is recognized in California and the appropriate distinction is made. *In re Parker,* 57 Cal. App. 2d 388, 134 P. 2d 302 (1943) involved an attack on a forgery conviction on habeas corpus. In treating this matter, the court said:

> Perhaps the force of a charge of forgery might be thus completely overcome, even on habeas corpus, if the paper charged as having been forged were one which could not, by any possibility, operate to defraud anyone; e.g. a purely social letter, or a merely libelous letter *** on the theory that the pleading totally failed to charge an offense known to the law. It is not necessary,

however, that the forged writing create a valid and legally enforceable obligation in order to constitute the making of it a forgery. *** It is sufficient that it might possibly deceive another and was prepared with intent to deceive and defraud another. *** [Citations omitted.]

The importance of the potential of the instrument as a vehicle for fraud as distinguished from legal efficacy was emphasized in that case, where the charge alleged that affidavits were forged. The court pointed out that it could not say that such an affidavit could not be used to defraud, but that it seemed that there were many ways in which they *might* be so used. At least one other jurisdiction having a statute like the California statute has taken a similar view. See *State* v. *Phillips*, 127 Mont. 381, 264 P. 2d 1009 (1953).

A reading of our statute and the accompanying commentary clearly demonstrates that it was the intention of the drafters of our statute to broaden the scope of the crime and to adopt that view of it expressed in the case law of California.

Another question raised indirectly arises from the fact that the crime of forgery was characterized in the information as possession of the forged instrument and not the uttering of it. We do not consider that there was a fatal variance, but it appears that the evidence would have sustained the crime either as possession or uttering. The remarks of the prosecuting attorney were appropriate. They, and the action of the trial court, were correct. Any doubt about the matter is removed by the reason given by the drafters for foreclosing the possibility of separate convictions for forgery, possession and uttering, contrary to preexisting law. In the commentary to this section, they took the view that forgery and the possession of forged instruments were preparatory offenses to uttering. Obviously, this was the view taken by the trial court.

The judgment is reversed and the cause remanded.